BRUNOT, J.
 

 Simon Maltry, Jr., died testate, leaving a widow in community and three children. His will is in nuncupative form by public act, and is as follows:
 

 “My name is Simon Maltry, Jr. I have been married twice. My first wife was Sarah Jennings, who is now' dead. Of that marriage there is one child, Frank Maltry. My second marriage was to Widow Mary Desbon, who is now alive. There are two children issue of my second marriage named Gertrude Maltry and Dorris Maltry, wife of Marcel Ray. I have a stepdaughter named Emma Desbon, the child of my second wife. All the property that I own belongs to the community which exists between my second wife and myself. I desire that my wife shall have, and give to her, the usufruct of my estate so long as she may live. I give to my stepdaughter, Emma Desbon, one-half of the disposable portion of my estate. The other half of the disposable portion of my estate I give to my daughters, or to the survivor of them. Should my stepdaughter die before me, I give my entire disposable portion to my daughters or to the survivor of them. Should both of my daughters die without issue, I give the disposable portion of my estate to my stepdaughter. The balance of my estate I desire divided equally among my children. I desire that my wife shall be appointed executrix of my estate with full seizin and without bond.”
 

 The foregoing will was filed, approved, and registered and ordered executed. The testamentary executrix named therein was confirmed. She took the required oath, letters testamentary issued to her, and she caused an inventory of the property and effects of the succession to be made. These proceedings were had during the months of May and June, 1920. Sometime thereafter, neither the date nor the year of which is disclosed by this record, Mrs. Mary Maltry, the usufructuary and surviving widow, in community, of the deceased, and .the executrix of his will, died, and. Gertrude Maltry was appointed and qualified as dative testamentary executrix.
 

 Thereupon Frank Maltry filed this suit, in which he attacks the provision of the will bequeathing to decedent’s two daughters one-half of the disposable portion, of his estate. The relief prayed for in the petition is that — ■
 

 “The legacy of one-half of the disposable portion of decedent’s estate, bequeathed by him to said Dorris Maltry, wife of Marcel Ray, and Gertrude Maltry, in his will aforesaid may be annulled and set aside and held to be of no effect, and in the alternative, and in the event said bequest is held to be valid, then that said legatees may be required to return the same to the succession of Simon Maltry, Jr., by way of collation or otherwise to equalize petitioner in the partition thereof. That petitioner’s rights to claim a partition, judicial or otherwise, of the succession of the estate of his late father, Simon Maltry, Jr., be reserved to him.”
 

 Although the petition makes Gertrude Maltry, as dative testamentary executrix, and individually, and Dorris Maltry, wife of Marcel Ray, and Emma Desbon, parties .to the suit, there is no attack upon the legacy of one-half of the disposable portion of decedent’s estate to Emma Desbon. All of the' defendants were cited, and each filed an exception of no legal right or cause of action. The exceptions were heard, sustained, and plaintiff’s suit was dismissed. From that judgment he appealed.
 

 
 *1035
 
 For the reasons stated we are concerned only with the legacy of the one-half of the disposable portion of decedent’s estate to his daughters, Gertrude Maltry and Dorris Maltry, wife of Marcel Ray.
 

 In our statement of thq case we quoted the will in full. By reference thereto it will be seen that the will divides the disposable portion of the estate, which is one-third thereof, into two equal parts. One part is given to decedent’s stepdaughter and the other part to his two daughters. The will then provides that the balance, or two-thirds of the estate, is to be divided equally among decedent’s son and two daughters. The exact words of the testator are:'
 

 “The balance of my estate I desire divided equally among my children.”
 

 The plaintiff and his two half sisters are the sole forced heirs of the deceased. The law of Louisiana undoubtedly favors the equality of forced heirs, and this is the rule, unless the donor has expressed the contrary in terms which indicate in unequivocal manner that such was his will.
 

 “The declaration that the gift or legacy is intended as an advantage or extra portion, may be made in other equivalent terms, provided they indicate, in an unequivocal manner, that such was the will of the donor.” C. 0. art. 1233.
 

 In the interpretation of wills it is the duty of the court to ascertain the intention of the testator and to give effect to it when ascertained. In the Succession of Burnside, 35 La. Ann. 715, Justice Manning, the organ of the court, said:
 

 “The cardinal rule for the interpretation of wills is to ascertain the intention of the testator, and it is a rule of universal jurisprudence. It has been called ‘the law’ of the instrument, the ‘sovereign guide’ to those who seek the meaning of the will, the ‘pole star’ whither all must look who would find that meaning, and, as Coin-Delisle has it, the trail which the judge should follow in all its turns and windings. And yet, this rule has been so cumbered by glosses, so abraded and fettered by conditions superimposed by judicial construction, and so perverted by narrow pedantry, that in some courts it has come to mean, not that the intention of the testator must be sought, but whether he had expressed that intention in technical language. And this is exemplified by the candor of Lord Ellenborough when he said, ‘If I were asked my private opinion as to what the testator meant when he used the words “effects,” I must suppose he meant to convey all his property for the maintenance of his- family,’ but nevertheless he would not give effect to that meaning by his judgment.
 

 “The common law has a vocabulary, of which certain words are used to designate various kinds of estates, tenures, etc., the meaning of which has been fixed for a time whereof the memory of man runneth not to the contrary. But to hold that a layman is supposed to know them, and do violence to his intention by construing them in their technical sense in an instrument whereof the admitted rule of construction is to ascertain his intention, and thus to make them mean what he could sot have meant and what the judge does not believe he meant, is not to follow that rule which all admit is the sovereign guide for interpreting a will.”
 

 In Succession of'Theurer, 38 La. Ann. 514, the court expresses itself as follows:
 

 “Modern jurisprudence has long imperatively demanded that the intent of a testator must be extracted from his language however obscure, if it be possible, and that effect must be given to that intent unless the law reprobates it,” etc.
 

 In the Succession of Good, 45 La. Ann. 1392, 14 So. 252, the court used this language:
 

 “We are first to ascertain the testator’s intention, and then to determine whether that intention clashes with any provision of law.”
 

 There is no ambiguity in the words used, and there can be but little doubt of the intention of a testator who says:
 

 “I give and bequeath to my step daughter, Emma Desbon, one half the disposable portion of my estate. The other half of the disposable portion of my estate I give to my daughters, *
 
 * *.
 
 The balance of my estate I desire divided equally among my children.”
 

 To our minds the testator has unequivocally expressed the intention that his daughters and son should each receive one-third of two-thirds of his estate, and that his daughters, in addition thereto, should, in any event, re
 
 *1037
 
 ceive one-half of one-third thereof. The testator has emphasized his intention that his daughters should receive an extra portion of his estate, and that his son’s interest should he limited to one-third of two-thirds of the estate by declaring:
 

 “Should my step daughter die before me, I give my entire disposable portion to my daughters or the survivor of them.”
 

 Counsel for plaintiff relies upon the following cases: Succession of Ford, 130 La. 442, 58 So. 141; Succession of Williams, 132 La. 865, 61 So. 852; Succession of Fath, 144 La. 463, 80 So. 659; and Succession of Ledbetter, 147 La. 771, 85 So. 908.
 

 In Succession of Ford the court said:
 

 “There is no manifestation of intention in the will before us to give an amount as an extra portion to the heirs of the second marriage. On the contrary, it seems to have been the purpose of the testator to maintain equality of interest among the heirs.”
 

 In that case the court found that it was the testator’s intention to maintain equality among the heirs, and its judgment is based on that finding.
 

 In the Succession of Williams the court found that the provisions of the will were ambiguous and contradictory. It quoted C. C. art 1723, and held:
 

 “Whenever the terms and dispositions are ambiguous and doubtful, the law favors that interpretation which will cause the property to be distributed more nearly in accordance with the law. The law favors an equal distribution, and, unless the testator clearly expressed an intention to dispose of his property otherwise, the law holds that he intended that his children should share it equally.”
 

 In the Succession of Fath, the testatrix gave six-sevenths of her realty to one of three sets of grandchildren; the donation being largely in excess of the disposable portion. The court in this ease, after citing with approval the authorities from which we have quoted supra, and after quoting from the provision of the will which was attacked, says:
 

 “The language or terms of the will, read in connection with the inventory which has been made in the succession, makes the intention of the testator quite evident. She intended to disregard the law which reserved two-thirds of her estate to her forced heirs, and to dispose of her property in her own way by giving about seven-ninths of it to one group of heirs to the great disadvantage of two other
 
 groups.
 
 This the law will not permit; and, as deceased did not say directly or indirectly that the .children of Christopher should have an advantage, or extra portion, the court cannot give it to them, as that would be making a will for the deceased, which the court cannot do. * * * The will of Mrs. Fath doesNnot show unequivocally and unmistakably, or in any other way, that the children of Christopher Fath are to be preferred to her other heirs; and that they were to receive what was given to them as an advantage or extra portion. The language used by the deceased in her will with reference to the six children of Christopher is the same language used with reference to her other grandchildren.”
 

 ■ In Succession of Ledbetter the sole issue was whether or not the second paragraph of the will was a prohibited substitution. We fail to see the application of this citation.
 

 We have quoted the prayer of plaintiff’s petition, supra, and note that on page 4 of his brief he says:
 

 “Plaintiff asked that the court reserve his rights to claim a partition, judicial or otherwise of the succession and estate of his late father, but the court denied him that right. Therefore, on the face of the judgment, appellant has been denied absolutely any interest in his father’s estate, and if the- judgment is permitted to stand as written, he will be deprived of his share of his father’s estate.”
 

 We think plaintiff is unnecessarily apprehensive. His interest in the estate of his deceased father was not at issue; neither was his right, as a co-owner in indivisión of the estate, to sue for a partition thereof involved in any manner. The question the court had to decide, and the only question before it, was whether or not plaintiff’s petition attacking the will disclosed a right or cause of action. There was no occasion for
 
 *1039
 
 incorporating in the petition a prayer for the reservation of his right to sue his coheirs for a partition of the estate. The law accords him this right, and he may or may not legally enforce it at his option. It is inconceivable that a judgment sustaining an exception of no cause of action in a suit by a forced heir, who merely attacks a specific provision of a will, in the hope that his interest in the estate might be increased thereby, can possibly affect his admitted interest 'in the estate or his rights with respect thereto.
 

 For these reasons the judgment is affirmed, at appellant’s cost.