23 So.2d 234

Succession of FERTEL.

No. 37657.

June 5, 1945.

Dissenting Opinion June 20, 1945.

Rehearing Denied July 17, 1945.

Albert B. Koorie, E. R. Schowalter, and M. C. Scharff, all of New Orleans, for appellant Barney Fertel.

Leon S. Cahn, of New Orleans, for appellant Mrs. Nettie Fertel Warren.

Benjamin M. Goodman, of New Orleans, for appellant Mrs. Annie Fertel Buhberg.

Sidney G. Roos, of New Orleans, for appellee Rodney Fertel.

ROGERS, Justice.

This case involves the interpretation of the will of Mrs. Julia Deiches Fertel, who died at her domicile in New Orleans on December 5, 1941. Mrs. Fertel was survived by her husband, Sam Fertel, and by three children, Mrs. Nettie Fertel Warren, Mrs. Annie Fertel Buhberg and Barney Fertel. She also left a grandson, Rodney Fertel Weinberg, son of Mrs. Buhberg by a previous marriage.

The will of Mrs. Fertel, made in olographic form and duly proved and registered according to law, is as follows:

"1st January 1936.
"My Last Will
"Everything I possess. I leave (the use of it to my husband during his life time, at his death it goes as following.
"To my 2 daughters Nettie and Annie and to my grand son Rodney Fertel Weinberg.
"To. my son Barney Fertel I leave One hundred dollars per month for the maintaince during his life time only to be paid out of the Estate.

"None of the properties cannot be sold or mortgaged, twenty years from hence.

"This will includes my box at the Bank of Commerce N O.

"Julia Fertel"

Sam Fertel, the husband of the testatrix, enjoyed the use of her property until he died on August 24, 1943. No attempt was made by anyone to enforce or to attack the will during his lifetime. Shortly after his death, Barney Fertel filed a suit attacking his mother's will, and Rodney Fertel Weinberg filed a suit seeking to have the will made effective as to him. The suits were heard together in the district court after issue joined by all parties, and judgment was rendered sending Rodney Fertel Weinberg into possession of 7/27th of the estate of the testatrix, recognizing the legitime of Barney Fertel, whom the testatrix sought to disinherit, and giving him 6/27ths, and giving Mrs. Nettie Fertel Warren and Mrs. Annie Fertel Buhberg each 7/27ths of her estate. The judgment specifically decreed that the legacy to Barney Fertel of $100 per month be included in his legitime. It was also ordered that the provision prohibiting the sale or mortgage of the property for twenty years be reputed as not written.

All the litigants appealed from the judgment except Rodney Fertel Weinberg, who answered the appeal. In his answer Rodney Fertel Weinberg asked that the disinherison of Barney Fertel be recognized and enforced; that he be awarded one-third instead of seven twenty-sevenths of the estate of the testatrix and that if Barney Fertel be not held to be disinherited that

his legitime be made up from the share of Mrs. Warren and Mrs. Buhberg, instead of from the share of Rodney Fertel Weinberg.

This litigation is the result of the attempt of Mrs. Fertel in disposing of her large estate by will to favor her daughters and her grandson over her son. Barney Fertel, the son of the testatrix, brought his suit for the purpose of ascertaining whether the will was valid in whole or in part and of obtaining a judicial determination of his rights thereunder. He charged that the will was ambiguous and not capable of interpretation; that it contained a prohibition substitution and that the attempted disposition in favor of Mrs. Warren and Mrs. Buhberg was void as not having been declared an extra portion.

Rodney Fertel Weinberg, in his suit, asserted the validity of the will and alleged that its effect was to disinherit Barney Fertel. In support of his allegations, he set forth certain specific instances of cruelty committed on the part of Barney Fertel towards his mother. On objection by counsel representing Barney Fertel, the trial judge refused to permit the introduction of any evidence as to the alleged disinherison on the ground that the testatrix did not set forth in the will any reason for disinherison as required by law. The final contention of Rodney Fertel Weinberg was that he should be recognized as a legatee of one-third of the estate of the testatrix and sent into possession thereof. Neither Mrs. Warren nor Mrs. Buhberg joined Barney Fertel in his attack upon the will, nor did they join Rodney Fertel

Weinberg in his demand that the will be carried out exactly as written. They took the position that irrespective of whether the will is valid or invalid or reducible because of the encroachment on the legitime due Barney Fertel, they are entitled to one-third of the estate of the testatrix, as two of the three forced heirs in an intestate succession, or as legatees of one-third each under the will, or, as forced heirs, entitled to one-third of the legitime plus one-third each of the disposable portion as universal legatees.

In support of the demand of Barney Fertel that the will of Mrs. Julia Deiches Fertel be declared void as creating a prohibited substitution, counsel for Barney Fertel have submitted an elaborate argument replete with references to the French authorities and to the decisions of this Court.

We find it unnecessary to enter into an extended comment upon the argument of counsel or to indulge in a lengthy discussion of the authorities referred to by them. Their contention is fully met and adversely disposed of by the recent decision of this Court in the Succession of Blossom, 194 La. 635, 194 So. 572, 575. The question involved in that case is similar in every respect to the question involved in this case. All the cases relied on by counsel for Barney Fertel were carefully considered and analyzed in the Blossom case and there is nothing in the French authorities cited by them that detracts from the force of the decision in that case.

The disposing portion of the will of Mrs. Fertel reads as follows: "Everything I

possess. I leave the use of it to my husband during his life time, at his death it goes as following. To my two daughters Nettie and Annie and my grandson Rodney Fertel Weinberg, To my son Barney Fertel I leave one hundred dollars a month during his lifetime only to be paid out of the estate."

The disposing language of the will in contest in the Blossom case reads as follows: "I give and bequeath to Annie Baker, my adopted daughter, now at Elwyn, Pa., the usufruct of my property— and at her death I wish this property to be equally divided between Evelyn B. Kern of Toledo Ohio—and George D. Marshall of Shreveport, Louisiana."

An examination of these wills reveals that while differing slightly in their wording, they are identical as to substance.

After a careful consideration of the contentions of counsel and of the cases cited by them, the Court held that the will in the Blossom case was valid. In the course of its opinion the Court made the following correct observation:

"In the case at bar, the property itself was not bequeathed to the adopted daughter of the testatrix. The testatrix bequeathed to her the usufruct of the property and bequeathed the property itself to Evelyn B. Kern and George D. Marshall. Therefore, at the death of the testatrix the usufruct vested in one person and the naked ownership thereof in others. Such stipulations in a last will are valid under Article 1522 of the Code."

So in this case the property itself was not bequeathed to the husband of the testa-

trix. The testatrix bequeathed to him the use of the property and bequeathed the property itself to her two daughters and her grandson. Therefore, at the death of the testatrix the usufruct vested in her surviving husband and the naked ownership of the property vested in the named legatees.

Counsel for the adopted daughter in the Blossom case advanced the same argument in their attack on the will that counsel for Barney Fertel is advancing in this case —that the naked ownership of the property did not vest in the named legatees at the death of the testatrix. This Court held that the argument was unsound and that it was contrary to the jurisprudence. The Court quoted with approval from the Succession of Law, 31 La.Ann. 456, as follows:

"* * * the testatrix bequeathed all her property to her husband 'during his natural life', and the will provided that 'at his death, the half of my property or money (shall) go to' certain named legatees.

"The will was attacked on the ground that it contained a prohibited substitution. But the court held that the bequest to the husband was the usufruct of the property, and, speaking of the clause in the will that 'at his death' the property should go to another, the court said: 'We admit that the words used by the testatrix do not describe and convey—as fully as she could have described and conveyed them—her wishes and her intentions; but—from those words—only one inference can be drawn, and it is that—at the death of the testa-

trix—her estate would pass to her preferred legatees, * * * subject to the usufruct bequeathed to her husband.'

"The phrase 'at the death of the testatrix' is italicized in the text. That case is on all fours with the one now under consideration. The only difference is that in that case the testatrix bequeathed to her husband her property during his natural life, which the court held to be a bequest of the usufruct. In the instant case the testatrix bequeathed to her adopted daughter the usufruct of her property. In that case, as in this one, the will specified that, 'at the death' of the person who was given the usufruct, the property itself should pass to another. In Succession of Law, supra, the court held that the naked ownership of the property passed to the legatees at the death of the testatrix."

In this case, as in the Succession of Law and in the Succession of Blossom, the will specifies that, at the death of the person who is given the usufruct of the property, the property shall pass to the preferred legatees. And since in the Succession of Law and Succession of Blossom the Court held that the wills were not invalid on the theory that the naked ownership of the property did not vest in the legatees until after the death of the usufructuary, we find no warrant in law for holding that on the same theory the will in this case is invalid.

Counsel for Barney Fertel argue that the will is ambiguous and incapable of interpretation. They insist that from a reading of the instrument it is not at all clear what the testatrix had in mind when she wrote it. They say it is obvious that

her underlying idea was to give the use of her property to her husband and, at his death, to the named beneficiaries, but that she placed a restriction of twenty years nonalienation and hypothecation on the whole use. They further say that the testatrix either wanted to bequeath the ownership of her property to her husband for his lifetime and, on his death, to the three named legatees, or she wanted to bequeath the use of her estate to her husband for his lifetime and, at his death, to the three named legatees.

■ The judge of the district court correctly ordered that the provision of the will forbidding the sale or mortgaging of the property of the testatrix for twenty years be repudiated and considered as not written. This Court has uniformly held that such statements in a will are purely precatory in their nature and reputed as not written. Succession of Feitel, 176 La. 543, 146 So. 145.

One of the cardinal rules laid down by the Civil Code in Article 1712 for the interpretation of wills is that: "* * * the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament." Another rule of interpretation of equal importance is laid down by Article 1713 of the Civil Code in these words: "A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none."

These rules have been strictly adhered to by this Court in numerous cases involving the interpretation of wills. Typical of these cases is the Succession of Mc-Burney, 165 La. 357, 115 So. 618, holding that the first and cardinal rule among the general rules for the interpretation of wills is that the intention of the testator must be ascertained, and all other rules are only means to that end. And Succession of Wilcox, 165 La. 803, 116 So. 192, holding that the only function of the Court is to determine and carry out the intention of the testator if it can be ascertained from the language of the will.

■ It is evident from a reading of the will that it was written by the testatrix without the aid of counsel. The law is indulgent in all such cases. It exempts language from technical restraint and obeys the clear intention however informally conveyed. If obscured by conflicting expressions, it seeks the intention in a purpose, consistent and rational, rather than the reverse; and, of two interpretations, it selects that which saves from total intestacy. The testator's intention is his will. This is the first rule of interpretation, to which all others are reduced. The intention must be enforced as far as it can be done legally. Succession of Blakemore, 43 La.Ann. 845, 9 So. 496.

■ When a will is executed, a reasonable and natural presumption is that the testator intends to dispose of his entire estate. There is no presumption that he intends to die intestate as to any part of his estate when the language he uses will clearly carry the whole.

■ We shall now consider the will of Mrs. Fertel in the light of the legal principles to which we have hereinabove refer-

red. Although the words used by the testatrix in describing and conveying her wishes and intentions may not be as clear as they would be if she had availed herself of legal advice in drafting her will, nevertheless in our opinion only one inference can be drawn from those words, and it is that at her death her entire estate should pass to her two daughters and grandson, subject to the usufruct bequeathed to her husband and to the legacy of $100 per month bequeathed to her son.

There is nothing in the words used by the testatrix in drafting her will to induce the belief that it was not her intention to dispose of all her property. On the contrary, the language of the will indicates otherwise. The testatrix begins by showing that she is making her will and that she is dealing with everything she possesses. The presumption is, if it is necessary to indulge in presumptions in arriving at her intention, that the testatrix made her will for the purpose of disposing of her entire estate in the event of her death.

In her will Mrs. Fertel says:

"Everything I possess. I leave the use of it to my husband during his life time, at his death it (everything I possess) goes as following. To my 2 daughters Nettie and Annie and to my grandson Rodney Fertel Weinberg. To my son Barney Fertel I leave One Hundred dollars per month for the maintaince during his life time only to be paid out of the Estate." (Brackets ours.)

It will therefore appear that there are three dispositions in the will—one to the husband of the testatrix, one to her daughters and grandson, and one to her son. These several dispositions are constituent parts of a single plan devised by the testatrix for disposing of her entire estate. Her will, when considered in its entirety and not merely from the language used in one disposition, evidences the unmistakable intention of the testatrix to give all her property to her daughters and grandson, subject only to the use of the property by her husband during his lifetime and the payment to her son of $100 a month for life.

■ With reference to the proposition urged in the alternative by counsel for Barney Fertel that the disposition in the will in favor of Annie Fertel Buhberg and Nettie Fertel Warren is void as not having been declared to be an advantage or extra portion, it suffices to say that the proposition can not be maintained. This case, so far as that proposition is concerned, falls within the decision of this Court in Jordan v. Filmore, 167 La. 725, 120 So. 275. In that case, which is the leading case on the subject, this Court unequivocally held that in testaments mortis causa it was not necessary for a testator to express an intention to give the favored child an advantage or extra portion, as the mere bequest itself was sufficient evidence of the testator's intention. It was pointed out that the necessity for expressing an intention to give an advantage to a forced heir was confined to donations inter vivos and not to testaments.

Counsel for Barney Fertel contend, however, that the decision in Jordan v. Filmore should not be accepted as authority in this

case because it stands alone and is contrary to a number of decisions by unanimous courts holding to the contrary; and furthermore, that the Court in rendering its opinion has misconstrued the holdings in some of the decisions reviewed therein.

The decision in Jordan v. Filmore was reached after a careful consideration and full discussion of the question of whether, when the disposable portion is given to a prospective heir by testament, it must be expressly declared to be an extra portion in order to exempt the legatee from collation. We see no reason for disturbing the rule established in that case, which, in effect, was followed by the decisions of this Court in Succession of Levy, 172 La. 602, 134 So. 906, and Winbarg v. Winbarg, 177 La. 1071, 150 So. 21.

■ The contention of Rodney Fertel Weinberg, in his answer to the appeal that the intention of the testatrix was to disinherit her son, Barney Fertel, and asking that such disinherison be recognized and enforced, can not be considered. The judge of the district court, on proper objection, correctly excluded the testimony which Rodney Fertel Weinberg attempted to offer in support of his contention, on the ground that the testatrix did not express in her will any reasons for such disinherison as required by Article 1624 of the Civil Code. Otherwise, no question is made, or could be made, of the correctness of the judgment so far as it recognizes Barney Fertel as a forced heir of the testatrix and awards him his legitime.

Mrs. Nettie Fertel Warren and Mrs. Annie Fertel Buhberg are not interested in either upholding or in defeating the will of their mother. In either case each must receive one-third of the estate, as intestate heirs if the will is held to be invalid, and, as legatees, if the will is held to be valid. Therefore, so far as they are concerned, the question of the validity or invalidity of the will, in its entirety, is submitted without argument. Their complaint, urged with much earnestness on this appeal, is that if this Court affirms the judgment of the district court recognizing the right of Barney Fertel to his legitime, then the judgment appealed from is erroneous in dividing the residue of the estate equally among Nettie Fertel Warren, Annie Fertel Buhberg and Rodney Fertel Weinberg. Specifically, their contention is that the legitime of the three forced heirs, or two-thirds of the decedent's estate, should be first satisfied before applying the dispositions of the will, and that only the disposable portion, or one-third of the decedent's ·estate, should be divided equally among the three forced heirs.

In disposing of the issues involved in this case, the judge of the district court handed down an ably written opinion. In his opinion, he assigns the following reasons for the ruling complained of.

"A testator has the right to make any disposition of the estate he or she desires as long as the legitimes of the forced heirs are protected. Legitime is a portion of an estate a forced heir has a right to claim if an attempt is made to deprive him of it. His claim, if upheld, reduces the value of the estate to be divided among the other heirs, in an amount equal to the legitime

that has been claimed successfully by the forced heir.

"Barney claims his legitime, two-ninths of the estate, and is upheld in that claim. That leaves seven-ninths of the estate to be divided among the other heirs mentioned in the will. In effect, 'Everything I possess' is now seven-ninths of the original estate.

"Dividing the remainder of the estate, 'everything I possess,' equally between Annie Fertel Buhberg, Nettie Fertel Warren, and Rodney Fertel Weinberg, we find that the legitimes of Annie Fertel Buhberg and Nettie Fertel Warren are protected.

"Since the legitime is the only portion of an estate that a forced heir can claim as a legal right, Annie Fertel Buhberg and Nettie Fertel Warren have no claim against the estate. Their legitimes have been protected.

"The intent of the testament seems to be in perfect accord with this division:

"Obviously Mrs. Fertel intended to leave all of her estate to her two daughters and her grandson, but this she could not do. The Court must follow the mandate of the Revised Civil Code of Louisiana; Barney Fertel is a forced heir, and he is entitled to his legitime, and it is the duty of this Court to give effect to the law.

"It certainly was the intent of the testator to give Barney Fertel less than her two daughters and her grandson. The favoritism expressed in the testament is for the two daughters and the grandson.

"The will in unimpeachable terms gives all of the property to Annie and Nettie, the two daughters, and Rodney Weinberg, the grandson, subject only to the use of the property by the surviving husband during his lifetime and to the payment to Barney Fertel of one hundred dollars a month for life. It is self-evident that the will did not favor Barney Fertel, and to give him his legitime in addition to the one-hundred dollars a month for life would be a substitution of a favoritism by the Court, rather than a following of the favoritism expressed in the testament. The one hundred dollars per month must be considered as included in the legitime.

"Mr. Fertel is now dead. That leaves the ownership of the balance of the property, seven-ninths, to be divided directly between Annie, Nettie, and Rodney Weinberg.

"The contention of learned Counsel for Annie Fertel Buhberg and Nettie Fertel Warren that their clients each should receive one-third of the disposable portion plus their legitime is based on the erroneous assumption that the will gave to their clients each one-third of the estate. The will does not declare they are to receive one-third of the estate any more than it declares that Rodney Fertel Weinberg is to receive one-third of the estate. According to the language of the will, after the death of the usufructor, the estate:

" 'Goes as following: (Referring to 'Everything I possess')

" 'To my two daughters Nettie and Annie and to my grandson Rodney Fertel Weinberg.'

"If the contention of the daughters is correct, Barney should receive more than

Rodney, and Annie and Nettie would likewise get more than Rodney; but this would not be carrying out the expressed intention of the testatrix who wanted to favor equally her two daughters and her grandson.

"'Disposition must be understood,' says the Code, 'in the sense in which it can have effect, rather than that in which it can have none.'

"The will did not intend that either of the two daughters should be favored over the other, nor did the will intend that either of the two daughters should be favored over the grandson. The will did intend that all three should be favored over Barney.

"Of course the Court must protect Barney in his legitime, but at the same time it must, in a legal way, follow the favoritism expressed in the testament.

"There seems but one way this can be done:

"Barney Fertel should receive his legitime, which is 1/3 of 2/3, or 2/9 or 6/27; (There should be included in making up this amount the bequest of one hundred dollars a month.)

"Mrs. Nettie Fertel Warren should be protected in her legitime, and by the terms of the will she should be favored over Barney; (She should receive, therefore, 1/3 of 7/9, or 7/27.)

"Mrs. Annie Fertel Buhberg, who is favored equally with her sister, should receive 1/3 of 7/9, or 7/27;

"Rodney Fertel Weinberg is equally favored by the testatrix with her two daughters, and therefore, in order to carry out that expressed favoritism, he should receive 1/3 of 7/9, or 7/27."

In conformity with those reasons, the trial judge ordered that the parties, by proper and appropriate proceedings, be sent into possession of the property in the proportion of 6/27ths to Barney Fertel and of 7/27ths each to Mrs. Nettie Fertel Warren, Mrs. Annie Fertel Buhberg and Rodney Fertel Weinberg, and judgment was rendered accordingly.

In their brief, counsel for Mrs. Warren and Mrs. Buhberg say: "The real basis of the contention of the three forced heirs, including Barney, is their right to their legitime, by priority and preference, which is enforceable against the stranger equally as well as against a coheir. This case does not involve an attempt to equalize shares among coheirs. What we are trying to do is to satisfy the rights of forced heirs under a testament which, on its face, encroaches upon the legitime."

From a reading of the will it is obvious that the testatrix did not intend to encroach upon the legitime of Mrs. Warren and Mrs. Buhberg. Her clear intention, so far as they are concerned, was to leave her entire estate to them and her grandson, Rodney Fertel Weinberg, and thereby to deprive only her son Barney of his legitime. Counsel, in their argument, assume that the will must be considered as disposing only of the disposable portion of the estate of the testatrix, and hence, when Rodney Fertel Weinberg, a stranger to the estate, claims his legacy, he can demand only one-third of the disposable portion.

We think counsel are in error in their assumption. The law is plain that the estate of the deceased person consists of his estate in its entirety and not merely the disposable portion thereof. The law also establishes the right of a forced heir to claim the legal portion coming to him out of the estate of the testator. The right needs only to be asserted to be allowed. Succession of Harris, 179 La. 954, 155 So. 446. But the forced heir does not have to claim his legitime. He may waive his right to do so. Nolan v. Succession of New, 31 La. Ann. 552.

As is well expressed in the opinion of the district court, "the contention of learned counsel for Annie Fertel Buhberg and Nettie Fertel Warren that their clients each should receive one-third of the disposable portion plus their legitime is based on the erroneous assumption that the will gave to their clients each one-third of the estate. The will does not declare they are to receive one-third of the estate any more than it declares that Rodney Fertel Weinberg is to receive one-third of the estate."

According to the language of the will, the entire estate of the testatrix is bequeathed to Mrs. Warren, Mrs. Buhberg and Rodney Fertel Weinberg. It is a mere coincidence, due to the fact there are three legatees, that under the will each legatee is to receive one-third of the estate. When therefore Rodney Fertel Weinberg claims his legacy, his claim is for one-third of the estate and not merely for one-third of the disposable portion.

In Jordan v. Filmore, 167 La. 725, 120 So. 275, 278, we held that the only right of a forced heir, who had by the will been deprived of all his share in the estate, was to claim from the other heirs his legitime. We said: "All that the testator has to do in the distribution of his estate among his heirs as he sees fit, to be sure that his will shall be carried out, is to avoid impinging upon the legitime which the law reserves to each of his forced heirs." This holding and quotation were referred to with approval in Walet v. Darby, 167 La. 1095, 120 So. 869, and Succession of Smith, 182 La. 389, 162 So. 21.

Since the legitime is the only portion of an estate that the forced heir can claim as a legal right and since the disposition in the will of Mrs. Fertel does not impinge upon the legitime of Mrs. Nettie Fertel Warren and Mrs. Annie Fertel Buhberg, they have no claim therefor against the estate. Their legitime is fully protected under the terms of the will.

The French authorities cited by counsel for Mrs. Warren and Mrs. Buhberg apparently treat the estate of the deceased as consisting of only the disposable portion and not of the entire estate. None of the examples referred to appear to be appropriate to the will under consideration. In all the cases referred to, a designated portion or amount of the decedent's estate was left to the legatees. As we have hereinabove pointed out, the will of Mrs. Fertel does not specifically declare that she leaves one-third of her estate to her preferred legatees. She merely declares that she leaves all that she possesses, meaning her entire estate, to those legatees, subject to

the usufruct given her husband and to the payment of $100 per month to her son.

■■■ The contention of Barney Fertel that he should be awarded, in addition to his legitime, the legacy of $100 per month to be paid out of the disposable portion, is discussed in the opinion of the trial judge which we have hereinabove quoted. As is correctly shown in the opinion, it is obvious that it was not the intention of the testatrix to give Barney Fertel the legacy of $100 a month in addition to his legitime. As a matter of fact, it was the clear intention of the testatrix under her will that Barney Fertel should receive nothing more out of her estate than the $100 per month expressly bequeathed to him. We find no merit in the contention.

Since this case was argued and submitted, Rodney Fertel Weinberg has filed a petition in this Court setting forth that under a judgment of the Civil District Court, Parish of Orleans, rendered and signed on March 13, 1945, he was granted permission to change his name to that of Rodney Fertel, and asking that in any judgment rendered herein this Court recognize this change in petitioner's name.

For the reasons assigned the judgment appealed from is affirmed and it is further ordered that in said judgment the change of the name of Rodney Fertel Weinberg to Rodney Fertel be recognized.

O'NIELL, C. J., concurs and assigns reasons.

FOURNET, J., dissents and assigns reasons.

HIGGINS, J., takes no part.

O'NIELL, Chief Justice (concurring).

While I subscribe to the decree affirming the judgment appealed from, I must say that I have considerable doubt that the 7/9 of the estate, remaining after reserving to Barney Fertel the 2/9 to which he is entitled as a forced heir, should be distributed equally among the three legatees, namely, the two daughters and the grandson of the testatrix. If article 1501 of the Civil Code is applicable to this case, it seems that each of the two daughters of the testatrix should retain her legitime of 2/9 of the estate, besides receiving her 1/3 of the disposable portion,—that is, 1/3 of 1/3,—of the estate. In that way each of the daughters would receive what her mother bequeathed to her, being the 1/3, which each of them would have inherited if their mother had died intestate. Inasmuch as there is no doubt or dispute that Barney Fertel is entitled to 2/9 of the estate in spite of his mother's will, the only contest is between the two daughters of the testatrix, on the one side, and the grandson on the other side. And the only question at issue is whether the 2/9, which must be reserved for Barney Fertel, shall be deducted from the 1/3 which was bequeathed to the grandson, or shall be deducted pro rata from the three legacies, so as to leave to each legatee —to each daughter and to the grandson alike—2/9 of the estate. No one is concerned in that contest except the two daughters of the testatrix, on the one side, and her grandson, on the other side. The two daughters, of course, are forced heirs of the testatrix; but the grandson, being the son of one of these daughters, is not an heir of his grandmother.

Although the two daughters of the testatrix claim that each of them is entitled to retain her legitime of 2/9 of the estate, in addition to her legacy of 1/9 of the estate, the daughters do not rely upon or invoke article 1501 of the Civil Code. From this I infer that there is some reason, which is not quite clear to me, why this article does not give to the two daughters the same right to retain their legitime—in addition to receiving their share of the disposable portion which was bequeathed to them—that their brother has to demand his legitime. The article declares that the disposable portion of an estate may be given, in whole or in part, to one or more of the testator's children or successible descendents, "to the prejudice of his other children or successible descendants, without its being liable to be brought into the succession by the donee or legatee, provided it be expressly declared by the donor [testator] that this disposition is intended to be over and above the legitimate portion." There was no express declaration of an intention to exempt the legacies of the two daughters from being liable to a reduction if a contribution should become necessary to satisfy the demand of the other forced heir for the payment of his legitime. But the intention of the testator to give this advantage to her two daughters might be inferred from the fact that she actually bequeathed to each daughter her legitime plus 1/3 of the disposable portion of the estate, which—altogether—was exactly what each daughter would have inherited if the mother had died intestate. Hughes v. Hughes, 14 La.Ann. 85; Succession of Maltry, 161 La. 1032, 109 So. 827; Jordan v. Filmore, 167 La. 725,

120 So. 275; Succession of Levy, 172 La. 602, 134 So. 906. Article 1231 of the Civil Code, having reference to collation of donations inter vivos, makes provisions similar to those of article 1501, referring to the reduction of donations or legacies exceeding the disposable portion of an estate; and article 1233 provides that the declaration that the gift is intended as an advantage or extra portion may be made, not necessarily in the words of article 1231, but "in other equivalent terms, provided they indicate, in an unequivocal manner, that such was the will of the donor." In the Succession of Levy, 172 La. 602, 134 So. 906, it was held that article 1233 was applicable as well to the provisions of article 1501 as to those of article 1231.

My doubt as to whether the judgment is correct in dividing the 7/9 of the estate equally among the three legatees, instead of giving to each daughter of the testatrix her 1/3 and giving to the grandson 1/9 of the estate, comes largely from the decisions in the following cases, referring to article 1501 of the Civil Code, namely: Hughes v. Hughes, 14 La.Ann. 85; Miller v. Miller, 105 La. 257, 29 So. 802; Succession of Ledbetter, 147 La. 771, 85 So. 908; Succession of Maltry, 161 La. 1032, 109 So. 827; Jordan v. Filmore, 167 La. 725, 120 So. 275; Succession of Levy, 172 La. 602, 134 So. 906; and the quotation from Delvincourt, vol. 2, p. 218, in Miller v. Miller, 105 La. 257, 263, 29 So. 802, 805.

The reason why it is impossible to know what the intention of the testatrix was as to how the 7/9 of her estate should be divided among the three legatees in the event

that Barney should be allowed his legitime of 2/9 of the estate is that the testatrix had no thought of her son's being allowed 2/9 of the estate in spite of her will. What she intended, aside from giving Barney the $100 a month, was that her grandson should be substituted for Barney, as one of the heirs of her estate. She knew that she had only three heirs, namely, her two daughters and her son, and she must have known that each of them would inherit 1/3 of the estate if she left no will. But when she made her will she had no intention whatsoever as to how the 7/9 should be divided if Barney should demand 2/9, because she had no thought whatever of Barney's having a right to demand 2/9 of her estate in spite of her will. As we are obliged to dispose of the remaining 7/9 of the estate, one way or another, and as I cannot give any better reason why it should be disposed of otherwise I concur in the affirmance of the judgment appealed from.

FOURNET, Justice (dissenting).

As pointed out in the majority opinion, Mrs. Julia Deiches Fertel died leaving an olographic will reading as follows:

"Everything I possess. I leave (the use of it to my husband during his life time, at his death it goes as following.

"To My 2 daughters Nettie and Annie and to my grand son Rodney Fertel Weinberg. To my son Barney Fertel I leave One hundred dollars per month for the maintaince during his life time only to be paid out of the Estate.

"None of the properties cannot be sold or mortgaged, twenty years from hence. This will includes my box at the Bank of Commerce N O."

This will was attacked by Barney Fertel on the grounds (1) that it is ambiguous and not capable of interpretation; (2) that it contains a substitution prohibited by the laws of this state; and (3) that the attempted disposition in favor of Annie and Nettie Fertel is void since it was not declared as an extra portion. In the alternative he contended he should receive a legacy of $100 a month in addition to his legitime. From a judgment awarding him his legitime and dividing the remainder of the estate between the two sisters and the grandson, he, as well as his sisters, appealed, the grandson answering the appeal.

The majority opinion, without commenting on or discussing any of the authorities cited by counsel for Barney Fertel to sustain his position other than to say that "All the cases relied on by counsel for Barney Fertel were carefully considered and analyzed in the Blossom case and there is nothing in the French authorities cited by them that detracts from the force of the decision in that case," rests its holding on the decision of this court in Succession of Blossom, 194 La. 635, 194 So. 572, declaring: "The question involved in that case is similar in every respect to the question involved in this case." The majority opinion also states "An examination of these wills (those in the Blossom and instant cases) reveals that while differing slightly in their wording, they are identical as to sub-

stance." It is interesting to note, however, that in the majority opinion the holding in the Blossom case is not followed throughout, for in the Blossom case the adopted daughter was given all that the decedent willed her in her testament and, in addition, she received her legitime as a forced heir of the testatrix.

It is my opinion that the language used in the case at bar is more similar in verbiage and meaning to the language used in the cases cited by Barney Fertel to support the position taken by him than it is to the language used in the will involved in the Blossom case, which case did not overrule the cases cited by Barney's counsel but differentiated them, and that involved in the decision of this court in Succession of Law, 31 La.Ann. 456, on which decision the holding in the Blossom case was predicated.

It is to be noted, however, that in refusing the application for a rehearing in the Law case Mr. Justice White, as the court's organ, said: "In this case it is urged that the construction placed by us on the will of the deceased is an addition to its terms * * *. The meaning we have given to the words 'to go to,' in the opinion by us expressed, is exactly that hitherto long since attached by this court to similar words in Succession of Ducloslange, 4 Rob. [409], 410; and Roy v. Latiolas, 5 La.Ann. [552], 553. Even if we thought the views expressed in these cases latitudinarian, we would hesitate long before overthrowing the settled jurisprudence giving an interpretation to certain words when used in a last will."

Ever since the Latiolas case was handed down almost a hundred years ago, it has been the shuttlecock of this court. It was first overruled in 1882 in the case of Marshall v. Pearce, 34 La.Ann. 557, wherein the court said: "Its authority is of the weakest kind," pointing out that the "decision was rendered at Opelousas, when but three Judges were in their seats, Chief Justice Eustis being absent, Judge Preston was the organ of the Court. Judge Slidell, in assenting, expressly referred to the 'limited means he had had of examining the subject.' Judge Rost dissented."

Then, in 1916, in the case of Rice v. Key, 138 La. 483, 70 So. 483, 484, this court stated that Succession of Weller, 107 La. 466, 31 So. 883, decided in 1902, "in effect, overruled Marshall v. Pearce, and reinstated Roy v. Latiolas." In 1920, in Succession of Ledbetter, 147 La. 771, 85 So. 908, with the present Chief Justice as the organ of the court, the doctrine announced in Rice v. Key was unqualifiedly overruled and that announced in Marshall v. Pearce, which had overruled Roy v. Latiolas, was reinstated.

Only ten years later, in 1930, this court, in Succession of Williams, 169 La. 696, 125 So. 858, 859, held that the Williams will giving and bequeathing "unto Mary A. Williams, my beloved wife, for her use and benefit *all the property* both personal and real *to use for the period of her natural life and at her death everything shall belong to Lillian R. Williams,* my niece * * *" was null and void for the reason that it contained a prohibited substitution within the meaning and contemplation of

Article 1520 of the Revised Civil Code. (Italics mine.)

In disposing of her property in the Law succession the testatrix stated she gave and bequeathed "unto my beloved husband, Archibald Welles Beard, *all my property* of every kind and description, consisting of lands, stock, household and kitchen furniture, farming tools, etc., *to be used,* enjoyed and occupied by my said husband *during his natural life; and at his death,* the *half of my property or money, to go to Francis Henry Beard and Charles Porter Beard,* * * * *and the other half to go to the children of Mary Ann Law and William L.* Beard * * *." (Italics mine.)

The language used in the disposing portion of the will in the Law succession is so similar to that used in the Williams succession that it is impossible for me to reconcile the two and I therefore conclude it must be considered that the decision in Succession of Law has been overruled by our decision in Succession of Williams, particularly since the Williams case, instead of being overruled in the Blossom case, was differentiated. Consequently, it is my opinion that this ruling is controlling and that a strict adherence to the law as written in the Revised Civil Code is the only safeguard that will ever avoid the continued vacillation by this court on this subject.

To say the least, the will as written is confusing and impossible of enforcement. It is my opinion that the testatrix intended that her whole estate go to her husband with the admonition that the same not be

alienated for a period of twenty years and that at his death it should pass to her two daughters and her grandson, subject to Barney's legacy of $100 a month, to be paid out of the estate of the testatrix by her husband and after his death by her two daughters and her grandson.

In the majority opinion, however, in an effort to ascertain the intention of the testatrix, the court has departed from the provisions of Article 1712 of the Revised Civil Code requiring that the intention of the testatrix be discovered whenever possible, with the mandate that such intention be ascertained "without departing * * * from the proper signification of the terms of the testament," for it is my opinion that the majority opinion not only rewrites the will but that this resulting revision is not in keeping with the intention of the testatrix as reflected by the will. The effect of the court's ruling in the majority opinion is to rewrite the will to read: "I leave the usufruct of everything I possess to my husband and the naked ownership thereof to my two daughters, Nettie and Annie, and to my grandson, Rodney Fertel Weinberg," striking out as not written that portion declaring the property "cannot be sold or mortgaged, twenty years from hence," and construing that portion of the will giving Barney Fertel $100 a month during his lifetime as an obvious intent to disinherit him without following the procedure prescribed in the Revised Civil Code, decreeing him to be entitled to his legitime, which is 1/3rd of 2/3rds of the estate, or 2/9ths thereof, necessitating the reduction of the portion of the three lega-

tees accordingly when obviously the testatrix never entertained any such intention.

Of course when she drafted this will the testatrix was ignorant of the provisions of our law with reference to the right of her children to their legitime and to the inhibitions with respect to keeping property out of commerce and of fidei-commissum, but in determining the real intention of the testatrix the will must be considered in its entirety, including those portions thereof that are prohibited by law, and if such consideration is given the will and it is found difficult to ascertain just what her intention was, or that the same is impossible of enforcement, then the will should be declared null.

If the holding in the majority opinion that the testatrix intended to give only the usufruct of her estate to her husband is correct, then, had Barney Fertel chosen not to claim his legitime but instead to accept the legacy left him under the will, to be paid at the rate of $100 a month out of the estate of his mother, the will would be impossible to enforce, at least to that extent, for it would be impossible to give the thing to Barney and at the same time to give the usufruct thereof to the surviving spouse.

There is nothing in the will to show the testatrix intended to disinherit her son, as stated in the majority opinion. It may be she thought she was favoring Barney by giving him $100 a month for his lifetime for even though these people amassed a large fortune, there is a strong suggestion they lived very frugally and, judging from the language used in the will, the testatrix was apparently a person of very limited education. But if the court is right in the belief that she intended to disinherit her son and give his portion to her favored grandson, then the matter becomes even more involved and difficult for we must then decide whether her favoritism for her grandson, as expressed in the concurring opinion of the Chief Justice, was that he "should be substituted for Barney, as one of the heirs of her estate," and as such heir share equally with his mother and aunt, or whether he should be thus favored only if Barney accepted the conditions of the will. In other words, did she intend the results reached by the majority opinion, that is, that her two favored children should receive less than they would have by inheritance in order that the grandson, whom the court feels was intended to be substituted for Barney, might be favored when Barney claimed his legitime?

PER CURIAM.

Barney Fertel is the only party who has applied for a rehearing. His contention is that the will is null in that it violates article 1520 of the Civil Code. The article provides that a testamentary disposition by which the legatee is charged with the duty to preserve the legacy for a third person, to whom the title is to pass at the death of the legatee is a prohibited substitution. According to article 1522 a bequest of the usufruct of property to one person and of the naked ownership to another is not a prohibited substitution and is therefore a valid disposition of both the usufruct and the ownership of the property. In deciding, in any given case,

whether a legacy of this kind is violative of article 1520 of the Code, the only question is whether the intention of the testator as expressed in his will was to give the usufruct of the property to one person and the ownership to another, as permitted by article 1522 of the Civil Code. Each case is governed by the wording of the testament. The decisions on the subject are reviewed extensively, and compared in the Succession of Ledbetter, 147 La. 771, 85 So. 908. There is no necessity for reviewing or comparing the decisions again in this case. Here, the testatrix did not declare that she left her property to her husband, but declared that she left "the use of it" to her husband, and that at his death it should go to her two daughters and her grandson. By the term "the use of it" the testatrix must have meant the usufruct of the property, not the ownership of it. The expression that "at his death" it should go to the two daughters and the grandson of the testatrix meant merely that the possession of the property should be delivered to them at the death of the husband, who was to enjoy the use of it during his lifetime. The expression "at his death" did not mean that the title to the property should be vested in the husband of the testatrix, and at his death should pass from him to the two daughters and the grandson. It meant merely that the possession and use, or usufruct, of the property, should be enjoyed by the husband until his death, and that during his lifetime only the naked ownership should be vested in the two daughters and the grandson of the testatrix.

The petition for a rehearing is denied.