MOISE, Justice.
This case, involving the construction of a will written in French by Amelie Monte-gut under date of September 4, 1933, has been before this Court previously; and a decision was rendered (211 La. 112, 29 So.2d 583, 588) remanding it “for the restricted purpose of permitting the parties litigant (both appellees and appellants) to introduce evidence in proof of any and all circumstances which may aid in the discovery of the intention of the testatrix with reference to the controverted provision * * * ” of the will.
The will the subject of this controversy is translated as follows (211 La. at page 119, 29 So.2d-at page 585) :
“September 4, 1933
“Here is my Testament I leave one thousand dollars for masses and my expenses *1031 of burial 15 hundred dollars for Amelie and Lise St Martin one thousand dollars for Emma Montegut. on.e thousand for Luden and his son Pat Montegut 5 hundred for Stephanie and Marie Montegut, 5 hundred for Celestine St Martin. 5 hundred for Charles St Martin 5 hundred for Stephen Montegut, 5 hundred for settling my estate which I leave to Charles St Martin and to Pat Montegut, as the executor of my Testament All that I leave at the home of Amelie and Lise St Martin is for them.
“Amelie Montegut”
The issue herein involves the interpretation of that portion of the will which is italicized: whether the testatrix bequeathed “5 hundred” dollars to Charles St. Martin and Pat Montegut as remuneration for settling her estate, or whether she bequeathed “my estate.”
We incorporate by reference the statement of facts contained in the original opinion of this Court. On remand, the district judge, after having heard the additional testimony ordered by us to be introduced in evidence, found “that it was the intention of the testatrix to leave the balance of her estate to Charles St. Martin, Jr., and A. L. (Pat) Montegut and to name them her universal legatees.” He based this decision not only upon the evidence but also upon the “reasonable and natural presumption * * * that the testatrix intends to dispose of her entire estate and that she does not intend to die partly testate and partly intestate * * The three cases which are relied on in support of this presumption are Succession of Fertel, 208 La. 614, 23 So.2d 234; Succession of Blakemore, 43 La.Ann. 845, 9 So. 496; and Succession of McAuley, 29 La.Ann. 33, 35.
In the first of these cases we said (23 So.2d at page 238) : “When a will is executed, a reasonable and natural presumption is that the testator intends to dispose of his entire estate. There is no presumption that he intends to die intestate as to any part of his estate when the language he uses will clearly carry the whole.” (Italics mine.)
The facts in Succession of Fertel are not analogous to the present case. There the testatrix sought to disinherit one of her three children (and forced heirs), made a bequest of the usufruct of her estate to her husband and a bequest of what amounted to the naked ownership thereof to her other two forced heirs and a grandson, and then attempted to forbid any alienation or hypothecation of her properties for a certain period of time. The will whose provisions were attacked began with the words “Everything I possess.” (Italics mine.) Hence, there could be no doubt but that the testatrix did intend to dispose of all her property. Whether or not the disposition which she wished made could have been countenanced in law did not alter the fact that the testatrix in the Succession of Fer-tel did evidence an intent to bequeath “ev-* erything.”
*1033 In the Succession of Blakemore a will made ten years before the testator’s death was claimed to be inoperative as to property acquired during those intervening ten years. There certain collateral heirs claimed that a bequest to one nephew of “one-half of real estate and one-half of the (perishable) [property]” and to another nephew of “the other half” was not a universal disposition, but a special or particular legacy, and it was in the refutation of that contention that the Court said, by way of obiter dicta: “ * * * of two interpretations, it selects that which saves from total intestacy.” 43 La.Ann. at page 850, 9 So. at page 497.
The Succession of McAuley is not in point, for the reason that a bequest was made therein, conditioned upon the happening of a future event. As the event did niot happen, the bequest fell. In pressing for a contraction of the will favourable to them, the contingent legatees attempted to transpose certain words in the contingent legacy, and the Court refused to permit such transposition, holding that the wishes of the testatrix were clearly and unequivocally expressed. The question of partial intestacy was not even involved, since the testatrix had completely disposed of her property, having inserted the contingent legacy merely as a possible alternative disposition.
In deciding a case the Court cannot be bound by isolated fragments of jurisprudence considered separate and apart from the circumstances of fact which evoked them. Nor are we bound by previous dicta which only relates in a general way to the issues at hand. The litterings of an appellate tribunal are not sacrosanct; rather, we are obliged to weigh them in the light of the express provisions of the Civil Code. As was said in the dissenting opinion in the Succession of Fertel (by Fournet, J.), “* * * a strict adherence to the law as written in the Revised Civil Code is the only safeguard that will ever avoid the continued vacillation by this court * * 23 So.2d at page 244.
Amelie Montegut bequeathed by will $7,-000.00 in cash legacies. The entire inventoried value of her estate amounted to $11,987.38, of which $5,025.00 represented the appraised value of the land, which she did not specifically bequeath, leaving thus $6,953.38 as the value of her movable property. It is a strange coincidence that this figure should so closely approximate the sum total of her legacies, but not so strange when we find from the record that the decedent was an astute business woman, who kept a close check on her business affairs and had a fairly accurate idea of what she was worth in terms of cash, stocks and bonds. When we consider all these circumstances, as well as the fact that she included two favorite nephews in the list of special legatees, we come to the conclusion that it was “5 hundred for settling my estate” which she intended to leave them additionally, and not a third bequest — of the estate itself.
*1035 In cases of doubt that interpretal ion as to tile disposition of an estate should be adopted which would follow the legal order of distribution for the heirs. The sum total of the cash legacies made by her in her will approximates the value of the stocks, bonds and cash computed in the inventory of her estate. She was bound to know that she had land. One witness said that she complained that she had-no one to work the land; another said that she attended to her land operations herself. In the controversial provision of the testament the testatrix did not use the words “balance of my estate”, nor did she make any reference whatsoever to the land or the disposition of her land. Considering her will and the existence of the depression of 1933, we conclude that she evidently did not attach very much value to the land, and, we assume, neither did the defendants, for they waited a long time.between the probating of the will and the actual claiming of the lands through a judgment of court sending and putting them in possession. This was done when there was a probability that the land had value — minerals beneath the soil.
As shown from the cases above quoted, they are not analogous to the present situation. In each instance, the intent of the testator could be fairly ascertained from the language used within the four corners of the document itself. Our function as a court is to construe this.will as written, not to make another will by adding to the controversial provisions the words “balance of the estate” or by adding thereto the word “lands.” We must interpret what the testatrix said, not what we think she meant to say, because after all, that would be the operation of our minds, not hers.
In the case of Burthe v. Denis, 31 La. Ann. 568, 569, 570, our Court prescribed the polar star rules for interpretation of wills. They are:
“First — It is the intention of the testator which should be sought, and this should be deduced primarily, if possible, from the will itself, without resort to extrinsic circumstances.
“Second — 'If, from the terms made use of by the testator, his intention can not be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention.’ R.C.C. 1715. ******
“Third — Another important rule is, that in case of doubt, that interpretation should be preferred which will approximate closest to the legal order of distribution. This rule flows from the general principle that the law favors the distribution which it itself provides, and gives effect to the will of man only when that will is clearly expressed or fairly deducible.” (Italics mine.)
In that case the will of Mrs. Burthe, translated from the French, read as follows : “I institute for my universal legatees, conjointly, the children of my four deceased brothers, and in their default their descendants, by equal proportion in each branch.”
*1037 The distribution there was close to half a million dollars and was made just as the law provided, had there been no will. A testator may be intestate as to all of his estate or as to only a part thereof. What we did in the Burthe case is a safe criterion to follow in this case. As the disposition of “lands” is not clearly expressed in the will, we will consider that no disposition has been made, and we should follow the “distribution of heirship which the law itself provides.”
For these reasons the judgment of the lower court of June 26, 1948, in favor of Charles St. Martin, Jr. and A. L. (Pat) Montegut, and against the plaintiffs, is reversed and set aside, and judgment is hereby rendered in favor of plaintiffs and against Charles St. Martin, Jr. and A. L. (Pat) Montegut, setting aside the judgment of possession dated May 26, 1944, and sending and putting the legal heirs of Amelie Montegut, deceased, in possession of the residue of her estate in the proportion and distribution which the law itself provides in case of intestacy, the defendants Charles St. Martin, Jr. and A. L. (Pat) Montegut to pay all costs.
HAWTHORNE, J., takes no part.
McCALEB, J., concurs in the decree.