65 So.2d 104

Succession of ROUGON.

No. 40684.

April 27, 1953.

Kearney & Kearney, New Roads, for plaintiff-appellant.

Fitch & Fitch, Breazele, Sachse, & Wilson, Baton Rouge, for defendants-appellants.

Durrett & Hardin and C. C. Bird, Jr., Baton Rouge, and Jewell & Jewell, New Roads, for defendants-appellees.

HAMITER, Justice.

Nita Rougon, a femme sole, departed this life at her domicile in the Parish of Pointe Coupee on January 11, 1950. Surviving, and her only heirs at law, were three sisters, namely, Mrs. Nellie Rougon Decuir, Mrs. Alice Rougon Neff and Mrs. Nadege Rougon Lorio, and also three children of a predeceased brother (Zack H. Rougon), they being Mrs. Fern Rougon Lorio, James Davis Rougon and Zack H. Rougon, Jr.

An olographic last will and testament left by Miss Rougon, of date March 3, 1949 and which has been probated, provides for several particular legacies and, additionally, recites:

"The rest of the property and money be divided among my sisters, Mrs. Alice Rougon Neff, Mrs. Nellie Rougon Decuir, and Mrs. Nadege Rougon Lorio.

"The share of Mrs. Nadege Rougon Lorio is not to be disposed and at her death my wish is that my niece Mrs. Audrey Lorio Ritter receives it.

"I desire the share Mrs. Nellie Rougon Decuir receives be divided at her death between my two nephews Thomas Gordon Neff and Edward Ray Neff."

A controversy respecting the construction and validity of the quoted recitals developed among the named legatees and the other presumptive heirs; and, as a result, Mrs. Decuir, dative testamentary executrix of the succession and also a legatee, instituted this proceeding pursuant to the Louisiana Uniform Declaratory Judgment Act, LSA–R.S. 13:4231 et seq., to obtain a declaratory judgment construing such provisions, as well as fixing the rights of all persons affected, she alleging her interpretation thereof and praying that it be approved. Cited in the proceeding were the other legatees and presumptive heirs of decedent, all of whom filed answers in which they set out their respective views (many of which conflicted) as to the proper construction to be given the recitals and prayed that their rights be adjudged in accordance therewith.

After a hearing of the cause the district court rendered a declaratory judgment, supported by lengthy and well considered written reasons, decreeing:

"That *the dispositions* in said will providing that 'the rest of the property and money' be divided between Mrs. Alice Rougon Neff, Mrs. Nadege Rougon Lorio and Mrs. Nellie Rougon Decuir are valid only as to the share (an undivided one-third thereof) be-queathed to Mrs. Alice Rougon Neff, *and are invalid, null and void as to the purported shares (an undivided one-third each thereof) to Mrs. Nadege Rougon Lorio and Mrs. Nellie Rougon Decuir because said purported bequests to them (and at their deaths to Mrs. Audrey Lorio Ritter and to Thomas Gordon Neff and Edward Ray Neff as shown in the written reasons) are substitutions prohibited by law;* and that the said undivided two-thirds interest constituting the said purported bequests and shares of Mrs. Lorio and Mrs. Decuir (and Audrey Lorio Ritter and Thomas Gordon Neff and Edward Ray Neff) in 'the rest of the property and money', found and declared to be invalid herein, belongs to the heirs of the deceased Miss Nita Rougon (same being the parties declared in Paragraph 6 of the petition of the Executrix, and in the admissions of the answers of the defendants, to be the sole presumptive heirs of said deceased Miss Nita Rougon) and that said heirs are entitled to be recognized as owners and placed in possession thereof as provided by law in the case of an intestate succession; and that the said legacies to Mrs. Alice Rougon Neff, Mrs. Nadege Rougon Lorio and Mrs. Nellie Rougon Decuir are not made conjointly so as to enable any of them to have the benefit of accretion accorded legatees by law in the case of a conjoint legacy." (Emphasis by the district court.)

From the judgment all of the above mentioned legatees are appealing.

The pleadings and the briefs of the parties, as we appreciate them, present for our determination the following questions:

(1) With reference to the bequests to Mrs. Lorio and Mrs. Decuir, did the attending clauses relating to the dispositions of the shares on their deaths to secondary legatees effect the granting of lifetime usufructs to those sisters and naked ownerships to the named niece and nephews; or were such clauses merely precatory or suggestive in nature and, hence, regarded in law as not written; or were such clauses prohibited substitutions which rendered the bequests in their entirety null and void?

(2) Were the bequests to Mrs. Neff, Mrs. Lorio and Mrs. Decuir made conjointly with the ·result that one or more of those legatees would benefit by virtue of accretion in the event of the lapsing of any of the legacies?

■ It is fundamental that in the interpretation of a last will the intention of the testator is all important and controlling and the ascertainment of it must be undertaken, without departing, however, from the proper signification of the terms of the testament. LSA–Civil Code, Article 1712. If the will, or a bequest therein, is susceptible of both a legal and illegal construction, because the intention is not clearly expressed, that which is favorable to its validity is to be preferred. LSA–Civil·Code,

Article 1713; Swart v. Lane, 160 La. 217, 106 So. 833. Where the words are plain and unequivocal, on the other hand, a forced interpretation should not be adopted. Succession of Vatter, 192 La. 657, 188 So. 732; Succession of Stallings, 197 La. 449, 1 So.2d 690.

■ Although Miss Rougon's will is not couched in legal phraseology, and it is evident that she had no attorney to assist her in its preparation, we do not find the controverted recitals (above quoted) ambiguous. Thereby, she dealt with the residuum of her estate, which embraced all of her belongings of every nature and kind not covered by particular legacies, intending and ordering on her death a division of it into three shares with immediate ownerships of them vesting in her three sisters (Mrs. Neff, Mrs. Decuir and Mrs. Lorio), each taking one share. However, the titles to be vested in Mrs. Decuir and Mrs. Lorio, unlike the title bequeathed to Mrs. Neff, were qualified by the disputed provisions, the testatrix therein expressing the wish, desire and intention that upon the deaths of those sisters their shares be received by other designated legatees.

■ If the decisions in Rice v. Key, 138 La. 483, 70 So. 483, and Succession of McDuffie, 139 La. 910, 72 So. 450, were now decisive and controlling here the result of the qualified bequests to Mrs. Decuir and Mrs. Lorio, respectively, would be the granting of usufructs to those sisters and the naked ownerships to the named second-

ary legatees. But under the present jurisprudence such is not the effect. The doctrine of those cases was specifically repudiated in Succession of Ledbetter, 147 La. 771, 85 So. 908, 911, the court there commenting: "Being therefore compelled now to elect whether to correct or perpetuate the error of the doctrine announced in Rice v. Key and repeated in the Succession of McDuffie, we now correct the error, and overrule those decisions in so far as they hold that the giving of property to one person during his life and at his death to another is the giving of the usufruct to one and the naked ownership of the property to the other legatee." And subsequently the repudiation of that doctrine often has been recognized and affirmed. See Succession of Hunter, 159 La. 492, 105 So. 596, Succession of Heft, 163 La. 467, 112 So. 301, Succession of Williams, 169 La. 696, 125 So. 858, and Maddox v. Butchee, 203 La. 299, 14 So.2d 4.

Citing the Ledbetter case (and other cases) the court in Succession of Heft said [163 La. 467, 112 So. 302]: "It is well settled that a testamentary disposition containing the stipulation that at the death of the legatee the property shall go to another legatee named in the will is not the same thing as the giving of the usufruct to the one and the ownership of the property to the other legatee. * * * In order that a testament may convey the usufruct of property to one legatee and the ownership of it to another, the title to the property itself to the one legatee, as well as the usufruct to the other legatee, must be transmitted directly from the testator and invest the title in the one legatee and the usufruct in the other immediately at the death of the testator. * * *"

In Succession of Fertel, 208 La. 614, 23 So.2d 234, cited and relied on by some of the parties hereto as modifying the rule announced in Succession of Ledbetter, the court held that the immediate donee received a usufruct because in the will the bequest was for the use of the property.

On the question of whether the qualifying clauses attending the bequests to Mrs. Decuir and Mrs. Lorio are mere precatory suggestions or are prohibited substitutions, the following observations contained in Succession of Reilly, 136 La. 347, 67 So. 27, 32, are pertinent: "In more than a century of jurisprudence on the subject of substitutions and fidei commissa, prohibited by article 1520 of the [LSA–] Civil Code, the distinction between them and the difference in their effect has been consistently observed. The essential elements of the prohibited substitution are that the immediate donee is obliged to keep the title of the legacy inalienable during his lifetime, to be transmitted at his death to a third person designated by the original donor or testator. Such a disposition is null even with regard to the original donee or legatee. In the fidei commissum, whereby the donee or legatee is invested with the title and charged or directed to convey it to another person

or to make a particular disposition of it, only the charge or direction, as to the ultimate disposition of the donation or legacy, is null and is to be considered not written, leaving the donation or bequest valid as to the donee or legatee. A substitution is an attempt on the part of the donor or testator to make a testament for his donee or legatee along with his own will, and to substitute his own will for the legal order of succession from his donee or legatee. If permitted, the effect of a substitution would be to tie up the title and keep it out of commerce during the lifetime of the first donee, during which time neither he nor the person designated to receive the title at the donee's death could alienate it. A substitution is necessarily a fidei commissum, but a fidei commissum is not necessarily a substitution. In the fidei commissum the title is not tied up or kept out of commerce; the direction or charge, as to its disposition, is to be regarded only as a precatory suggestion addressed to the conscience of the donee or legatee, which, being illegal, but harmless, can have no binding effect, and may be legally regarded as not written." Also pertinent is a comment made in Succession of Heft, supra, quoted with approval in Maddox v. Butchee, supra [203 La. 299, 14 So.2d 7], reading: " * * A bequest of property to one legatee with the stipulation and on the condition that at his death and without any act of conveyance from him it shall belong to another legatee named in the will is a prohibited substitution. * * *" See additionally

Succession of Hall, 141 La. 860, 75 So. 802 and Girven v. Miller, 219 La. 252, 52 So.2d 843.

Respecting the bequests to Mrs. Decuir and Mrs. Lorio there appear to be no directions or requests that might be regarded merely as precatory suggestions addressed to their consciences, neither of them having been charged with making any particular disposition or conveyance of her share to another. Rather, the testatrix herself attempted the secondary dispositions contained in the testament, substituting her own will for the legal order of succession from her immediate donees. Thus, using language ordinarily and usually dispositive, she wrote:

"The share of Mrs. Nadege Rougon Lorio is not to be disposed and at her death my wish is that my niece Mrs. Audrey Lorio Ritter receives it.

"I desire the share Mrs. Nellie Rougon Decuir receives be divided at her death between my two nephews Thomas Gordon Neff and Edward Ray Neff."

Furthermore, these clauses evidence an intention that each immediate donee preserve the legacy during her lifetime, to be transmitted at her death to the person or persons designated by the testatrix. As to Mrs. Lorio's share that intention is definitely expressed. It appears by implication as to the other. Undoubtedly, if Mrs. Decuir were granted and had permission to dispose of her legacy, or a part thereof, *the*

*share which she receives* (the original full share, not an undisposed of portion) would be unavailable at her death for division between the named nephews.

■ As was correctly concluded and said by the trial judge: "It is, therefore, plain indeed that the said dispositions in said shares to Mrs. Lorio and Mrs. Decuir meet the simplest test of the substitution prohibited by our law in that they vest the said shares of property and money in the designated persons (Mrs. Lorio and Mrs. Decuir) and, at the death of such persons, vests the same said shares of property and money in other persons (Mrs. Audrey Lorio Ritter and Thomas Gordon Neff and Edward Ray Neff), who take the same directly from the said testatrix; but by a title which only springs into existence on the deaths of the first donees (Mrs. Lorio and Mrs. Decuir)."

Since the bequests to Mrs. Lorio and Mrs. Decuir contain prohibited substitutions, and are therefore wholly void, we must determine whether accretion respecting the affected two shares takes place in favor of the other immediate legatee, Mrs. Neff, the donation to whom is admittedly valid.

■ LSA–Civil Code, Article 1706 states: "The right of accretion relative to testamentary dispositions, shall no longer subsist, except in the cases provided for in the two following articles." And Article 1707, of which two articles it alone is applicable, provides: "Accretion shall take place for the benefit of the legatees, in case of the legacy being made to several conjointly. The legacy shall be reputed to be made conjointly when it is made by one and the same disposition without the testator's having assigned the part of such [each] colegatee in the thing bequeathed." (Brackets ours.) Hence, the primary question here is: In bequeathing the residuum of her estate to the three sisters did the testatrix assign the part of each?

An assignment of parts, in our opinion, was effected by the testatrix. In the first sentence of the testamentary provisions under consideration she directed that the rest of her property and money *be divided* among her sisters. In the following two sentences she referred to individual shares of Mrs. Lorio and Mrs. Decuir, expressing her will as to the dispositions thereof on the deaths of those respective donees. Taken together, the provisions clearly indicate that the testatrix thereby was investing each immediate legatee with a definite share or a one-third part of the residuum. The fact that the testatrix wanted two of the shares to ultimately go to secondary legatees designated by her, moreover, justifies the conclusion that her intention was to make a distributive legacy, not a conjoint legacy from which some of the sisters might benefit in the event of the lapse of a share. No accretion takes place, therefore, and the lapsed shares are inherited by the legal heirs.

Counsel for the several parties have cited numerous cases in our jurisprudence dealing with the question of accretion relative to testamentary dispositions. Consideration has been given to all, but in none have we found controverted provisions similar to those involved here. Consequently, a discussion of them is unnecessary.

For the reasons assigned the judgment appealed from is affirmed.

65 So.2d 109
## RICHARDS v. GARTH.
No. 40771.

March 23, 1953.

Rehearing Denied April 27, 1953.