HAWTHORNE, Justice.
This is a suit instituted by the collateral heirs of Mrs. Louise Bartels Thilborger to have a provision of her last will and testament declared null as constituting a prohibited substitution. The provision of the will under attack reads:
“(1) To Edward J. Thilborger my dear husband I give devise and bequeath the use of the Lodge and harbor, and cottages and the Louise Plantation as long as he lives and at his death to be given to the Charity Hospital to be used as a convalescent home to bring the sick for fresh air and regain their strength,”
The lower court rendered judgment recognizing plaintiffs as being the sole heirs of the deceased, entitled as such to the ownership of the Louise Plantation on Bayou Barataría in Jefferson Parish, said to contain about 1,100 acres.[1] From this judgment the Board of Administrators of the Charity Hospital of Louisiana at New Orleans has appealed.
Louise Bartels, wife of Edward J. Thilborger, died in New Orleans in 1936. Her will containing the provision here under attack was in due course admitted to probate, and a judgment was rendered decreeing Charity Hospital of Louisiana at New Orleans to be the owner of the plantation as a particular legatee, subject to the usu *813 fruct in favor of Thilborger. Thilborger died in 1939, and Charity Hospital took possession of the property.
Appellees take the position that the contested provision contains a prohibited substitution and is null and void under Article 1520 of the Civil Code, which provides:
“Substitutions and fidei commissa are and remain prohibited.
“Every disposition by which the donee, the heir, or legatee is charged to preserve for or to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee. * * *”
In explaining the provisions of Article 1520 this court on numerous occasions has said that the simplest test of the substitution prohibited by our law is that it vests the property in one person at the death of the donor and at the death of such person vests the same property in another person, who takes the same directly from the testator but by a title which springs into existence only on the death of the first donee. Such a disposition destroys the power of alienation of the property by the first donee, because he is bound to hold it until his death in order that the person then called to the title may take it. At the same time no power of alienation exists in the second donee during the life of the first, because his title comes into being only at the death of the latter. See Succession of Blossom, 194 La. 635, 194 So. 572.
It is the position of appellant that the disputed provision of the will is the bequest of the usufruct to the husband and the naked ownership to Charity Hospital, and is therefore authorized by Article 1522 of the Code, which provides that the disposition inter vivos or mortis causa by which the usufruct is given to one and the naked ownership to another shall not be considered a substitution and is valid.
In the recent case of Succession of Rougon, 223 La. 103, 65 So.2d 104, 107, the court said:
“Citing the Ledbetter case [Succession of Ledbetter, 147 La. 771, 85 So. 908] (and other cases) the court in Succession of Heft said (163 La. 467, 112 So. [301] 302) : ‘It is well settled that a testamentary disposition containing the stipulation that at the death of the legatee the property shall go to another legatee named in the will is not the same thing as the giving of the usufruct to the one and the ownership of the property to the other legatee. * * In order that a testament may convey the usufruct of property to one legatee and the ownership of it to another, the title to the property itself to the one legatee, as well as the usufruct to the other legatee, must be transmitted directly from the testator and invest the title in the one legatee and the usufruct in the other immediately at the death of the testator. . * * *’ ”
*815 In support of their position appellees cite and rely principally on Succession of Williams, 169 La. 696, 125 So. 858. In that case this court stated that under the language of the will under attack it was the intention of the testator to convey the title as well as the usufruct to his wife for the term of her natural life, and that it was only at the death of the wife that the ownership should vest in the second named legatee, the niece of the testator.
In 3 Loyola Law Review 185 ff., there appears an excellent comment written by James A. Bugea, then a member of the faculty of the Loyola School of Law, on the substitution-usufruct problem. He points out that the jurisprudence of this court is in a confused state, especially in that type of cases where the testator used qualifying words or phrases to designate the interest that the first party was to take, and that in such cases the decisions are conflicting, some where such qualifying words or phrases are used holding that the will is void as containing a prohibited substitution, and others where similar words or phrases are used holding that the will is valid as expressing a valid usufruct-naked ownership of disposition. See also dissenting opinion of Justice, now Chief Justice, Fournet, in Succession of Fertel, 208 La. 614, 23 So.2d 234, where he takes cognizance of this conflict in the jurisprudence and discusses some of the cases.
The problem is indeed perplexing, and it is difficult to reconcile or distinguish Succession of Williams, supra, decided in 1930, cited and relied on by appellees, and Succession of Fertel, supra, decided in 1945, cited and relied on by appellant.
In Succession of Williams the testamentary disposition is as follows [169 La. 696, 125 So. 859]:
“I, D. F. Williams, do give and bequeath unto Mary A. Williams, my beloved wife, for her use and benefit all the property both personal and real to use for the period of her natural life and at her death everything shall belong to Lillian R. Williams, my niece * *
The disposition in the Fertel case is [208 La. 614, 23 So.2d 235]:
“Everything I possess. I leave (the use of it to my husband during his life time, at his death it goes as following.
“To my 2 daughters Nettie and Annie and to my grand son Rodney Fertel Weinberg.”
As stated previously, the court held that the will in the Williams case was null as containing a prohibited substitution. In the Fertel case it was held that the will contained a bequest of the usufruct to one and the naked ownership to others and hence was valid under Article 1522 of the Civil Code.
*817 The majority opinion in Succession of Fertel did not mention or make any effort to distinguish the Williams case, but followed and relied on Succession of Blossom, supra, in which the bequest to the first legatee was of the “usufruct” of the property. In the Fertel case the court said that “An examination of these wills [the Blossom will and the Fertel will] reveals that while differing slightly in their wording, they are identical as to substance”. In short, what the court held in the Fertel case was that the bequest of the use of the property is tantamount to a bequest of the ■usufruct of the property.
In Succession of Blossom, supra, [194 La. 635, 194 So. 575] the court found that the Williams case was without application because the court in the Williams case held that the language there used disclosed that “the clear intention of the testator was to convey the title of the property as well as the usufruct to his wife for the term of her natural life and that it was only at the death of the wife that the ownership should vest in the legatee”.
The author of the opinion in the Williams case, after quoting the provisions of the will there involved, simply concluded that the words used disclosed a clear intent to convey to the wife both title and usufruct for the term of her natural life, but he gave no reasons as to how he reached this conclusion. However, under this conclusion the court must necessarily have recognized that the phrase “for her use and benefit” conveyed a usufruct to the wife, for it found that the disposition bequeathed both title and usufruct to her.
We see no real difference in a bequest of property for use and benefit and a bequest of the use of property. However, Succession of Fertel, a more recent case and one of the latest cases in which the problem was discussed, is clearly authority for the proposition that a bequest of the use of property is a bequest of the usufruct of the property. That such is the holding in the Fertel case was recognized in the later case of Succession of Rougon, supra, wherein it was said: “In Succession of Fertel, 208 La. 614, 23 So.2d 234, * * * the court held that the immediate donee received a usufruct because in the will the bequest was for the use of the property." (Italics ours.)
We therefore conclude that the holding of this court in Succession of Fertel is decisive of the instant case, for it is apparent to the reader that the language of the bequest in the Fertel case is very similar to the language used in the bequest in the instant case. The testamentary disposition in the instant case more closely resembles the disposition in the Fertel case than that in the Williams case, because in the Williams case the testator gave his wife for her use and benefit all of his property, whereas in the Fertel case, as here, the testatrix gave her husband only the use of the property.
*819 The bequest in the Fertel case, which we again quote, provides:
“Everything I possess. I leave (the use of it to my husband during his life time, at his death it goes as following.
“To my 2 daughters Nettie and Annie and to my grand son Rodney Fertel Weinberg.”
In concluding that this bequest was not a prohibited substitution but was valid under the provisions of Article 1522 of the Civil Code, the court in the Fertel case said in a per curiam on application for rehearing:
“ * * * Here, the testatrix did not declare that she left her property to her husband, but declared that she left ‘the use of it’ to her husband, and that at his death it should go to her two daughters and her grandson. By the term 'the use of it’ the testatrix must have meant the usufruct of the property, not the ownership of it. The expression that ‘at his death’. it should go to the two daughters and the grandson of the testatrix meant merely that the possession of the property should be delivered to them at the death of the husband, who was to enjoy the use of it during his lifetime. The expression ‘at his death’ did not mean that the title to the property should be vested in the husband of the testatrix, and at his death should pass from him to the two daughters and the grandson. It meant merely that the possession and use, or usufruct, of the property should be enjoyed by the husband until his death, and that during his lifetime only the naked ownership should be vested in the two daughters and the grandson of the testatrix.”
Therefore, when the testatrix in the instant case said, “To Edward J. Thilborger my dear husband I give devise and bequeath the use of * * * the Louise Plantation as long as he lives and at his death to be given to the Charity Hospital * * * ”, she was bequeathing to her husband the usufruct of the property and to Charity Hospital the naked ownership; and at the moment of her death the usufruct vested in the husband and title or naked ownership vested in Charity Hospital. Consequently the testamentary disposition here under consideration does not contain a prohibited substitution and is valid.
Appellees appear to value greatly, as supporting their position, a codicil which Mrs. Thilborger added to the will involved here, which codicil reads:
“Should anything happen that my husband E. J. Thilborger and Myself die together in an accident or any other way I then appoint J. J. Cullinane and Mat A. Grace to take the place of E. J. Thilborger and give all that I have given to E. J. Thilborger to be given to Edith Pope my precious niece and may God bless her.”
Appellees apparently feel that this codicil strengthens their argument that the disposi *821 'tion of the plantation is a prohibited substitution, but they are mistaken as this codicil in no way renders the legacy to Charity Hospital a prohibited substitution; all this appendix does is to make a vulgar substitution, permissible under Article 1521 of the Civil Code — that is, the niece would simply be substituted for the husband and would receive what it was intended for the husband to receive: the usufruct of the Louise Plantation.
For the reasons assigned the judgment appealed from is reversed, annulled, and set aside, and plaintiffs’ suit is dismissed at .their costs.

. The trial judge did not favor us with written reasons' for judgment. However, from the language used' in the judgment he evidently concluded that there had been a non-compliance by Charity Hospital with the donative condition. Appellees do not seek in this court a revocation of the bequest on this ground and have abandoned it as being without merit.