235 So.2d 411 (1970)
256 La. 156
Powell CRICHTON, Jr., et al.
v.
Succession of Kate Crichton GREDLER.
No. 49822.
Supreme Court of Louisiana.
May 4, 1970.
Rehearing Denied June 8, 1970.
*412 Smitherman, Smitherman, Purcell, Lunn & LeVan, David E. Smitherman, Gerald LeVan, Shreveport, Henry G. Hobbs, Minden, for defendants-relators.
Blanchard, Walker, O'Quin & Roberts, Robert Roberts, III, Joseph W. Milner, Shreveport, for plaintiffs-respondents.
Leonard Oppenheim, New Orleans, amicus curiae.
SUMMERS, Justice.
Plaintiffs Gloria Crichton McGehee and Powell Crichton, Jr., are a niece and nephew, respectively, of Kate Crichton Gredler the decedent. They petitioned for the annulment of the last will and testament of the decedent, contending primarily that the will contained a substitution prohibited by the Constitution and Civil Code of Louisiana.
The trial court refused to annul the will. On appeal the Second Circuit reversed. La.App., 220 So.2d 714. Writs were granted on the application of the proponents of the will. 254 La. 129, 222 So.2d 882.
The contested will is in olographic form and is dated March 6, 1963. After provisions revoking all prior wills, appointing Thomas Crichton, Jr., her brother, as executor and directing the payment of her debts, the will provides:
* * * and I do hereby give and bequeath to the said Thomas Crichton jr. as trustee for the benefit of his two sons, my nephews, Thomas Crichton Third, and John H. Crichton, all the rest, residue and remainder of my property, both real and personal, except my residence with contents therein, located at Creton Lake Road in the town of Bedford, County of Westchester, State of New York, and except also all moneys now to the credit of my account in the First National City Bank of New York (Mt. Kisco branch); shall thereafter be held in an undivided one-half interest in each of the aforementioned two trusts, each trust created and named for its above named beneficiary, and both trusts shall be Louisiana trusts, administered in the State of Louisiana, in accordance *413 with the laws of LouisianaI appoint Thomas Crichton, jr., my brother, Trustee of each of above named trusts. In the event that Thomas Crichton, jr. should die, become incapacitated or refuse to act, prior to the termination of these trusts, then the First National Bank of Shreveport, Louisiana, shall become Trustee. The trustee, Thomas Crichton, jr., shall have full power to sell, mortgage, or lease all property, and otherwise manage all trust property with the same control and freedom as though trustee owned said property personally.
In the event that either beneficiary, Thomas Crichton third or John Hayes Crichton be not living when this trust is terminated, both income and corpus of such said trust shall be paid over or conveyed by Trustee to the child or children of said deceased beneficiary in equal, undivided portions. In event that neither a beneficiary nor his child or children are living upon the termination of this trust, then said income and corpus shall be paid over or conveyed by the Trustee to the other trust beneficiary or, if he be not living, then to his child or children in equal or undivided portions. In the event that neither beneficiary, no (sic) any of their children be living upon termination of these trusts, as above herein set forth, then the income and corpus of these trusts shall be paid over or conveyed to the children of my deceased brother, Powell Crichton; namely, Powell Crichton, jr., Kate Crichton, Edward B. Crichton and Gloria Crichton McGehee in equal or undivided portions.
The Trust Estates Law of 1938, as amended, Section 16 of Article IV of the Constitution, as amended in 1962 to provide that a trust may contain substitutions to the extent authorized by the Legislature, and Article 1520 of the Civil Code, as amended in 1962 to make substitutions in trust an exception to the prohibitions of that article, were all in effect when Mrs. Gredler drew her will on March 6, 1963. Thereafter the Trust Estates Law of 1938 was superseded by the Louisiana Trust Code (La.R.S. 9:1721-2252) enacted in 1964.
At the time of Mrs. Gredler's death in 1965, therefore, the law applicable to trusts was contained in Section 16 of Article IV of the Constitution as amended in 1962, Article 1520 of the Civil Code as amended in 1962 and the Louisiana Trust Code of 1964. All parties concede that the Trust Code applies to the trusts in this case.
The suit to annul Mrs. Gredler's will was instituted in 1967. Aside from the primary contention that the will was a nullity because it contained a prohibited substitution, the attack also asserts that the will is defective because it suspends until a future indeterminate time the ultimate vesting of the decedent's estate in her legatees, and because it dictates that persons succeed to the estate who were neither ascertainable nor necessarily in being at the decedent's death.
Proponents of the will defend its validity on the ground that the condition under which the trust property devolves upon the successor legatees is impossible of fulfillment and should be considered as not written; if the language of the trust provision dictating the transfer of principal after the termination of the trusts creates a prohibited substitution, Sections 2026 and 2027 of the Trust Code permit the deletion of these transfer provisions without defeating the purposes of the trusts, and the broad powers granted to the trustee constituted the contested disposition nothing more than a fidei commissum.
Does the will contain a substitution? The answer is yes.
Prohibited substitutions are defined by the law. Prior to its amendment in 1962, Article 1520 of the Civil Code read:
Substitutions and fidei commissa are and remain prohibited.
Every disposition by which the donee, the heir, or legatee is charged to preserve *414 for or to return a thing to a third persons is null, even with regard to the donee, the instituted heir or the legatee.
In consequence of this article the trebellianic portion of the civil law, that is to say, the portion of the property of the testator, which the instituted heir had a right to detain, when he was charged with a fidei commissa or fiduciary bequest is no longer a part of our law.
This codal provision had, in substance, been a part of Louisiana's Civil Code since 1808.
The law forbidding substitutions was considered to be of such importance that the Constitution adopted in 1921 incorproated the prohibition in Section 16 of Article IV. The provision was amended several times, (see Act 318 of 1944, Act 208 of 1952, and Act 548 of 1958) so that, prior to the 1962 amendment, it read as follows:
No law shall be passed abolishing forced heirship; provided, that children lawfully adopted shall become forced heirs to the same extent as if born to the adopter and shall retain their rights as heirs of their blood relatives, but their blood relatives shall have their rights of inheritance from these children terminated. No law shall be passed authorizing the creation of substitutions, fidei commissas (sic) or trust estates; except that the legislature may authorize the creation of trust estates for a period not exceeding ten years from the settlor's death as to a beneficiary which is not a natural person; ten years from the settlor's death as to a beneficiary who is a natural person or until the death of the beneficiary whichever is the longer period; and provided further that this prohibition as to trust estates or fidei commissas (sic) shall not apply to donations strictly for educational, charitable, religious purposes or trusts created by employers for the benefit of their employees.
In construing Article 1520, our cases have formulated a distinction between the substitution and the fidei commissum and clarified the definitions applicable to each. Most often quoted to illustrate this development is the case of Succession of Reilly, 136 La. 347, 67 So. 27 (1915), in which the will under attack contained the following language:
And the balance of whatever I may die possessed of I give and bequeath unto Bishop Thomas Heslin, to be distributed as he sees fit among my people in Ireland and for the further education of Thomas Regan, hereby instituting Bishop Heslin my sole heir and universal legatee.
As organ of the court, Chief Justice O'Niell declared that the bequest amounted to a fidei commissum in which the directions to Bishop Heslin were merely precatory and would be considered not written. This is what he wrote:
In more than a century of jurisprudence on the subject of substitutions and fidei commissa, prohibited by Article 1520 of the Civil Code, the distinction between them and the difference in their effect has been consistently observed. The essential elements of the prohibited substitution are that the immediate donee is obliged to keep the title of the legacy inalienable during his lifetime, to be transmitted at his death to a third person designated by the original donor or testator. Such a disposition is null even with regard to the original donee or legatee. In the fidei commissum, whereby the donee or legatee is invested with the title and charged or directed to convey it to another person or to make a particular disposition of it, only the charge or direction, as to the ultimate disposition of the donation or legacy, is null and is to be considered not written, leaving the donation or bequest valid as to the donee or legatee. A substitution *415 is an attempt on the part of the donor or testator to make a testament for his donee or legatee along with his own will, and to substitute his own will for the legal order of succession from his donee or legatee.
In Succession of Heft, 163 La. 467, 112 So. 301 (1927), a prohibited substitution was defined as "A bequest of property to one legatee with the stipulation and on the condition that at his death and without an act of conveyance from him it shall belong to another legatee named in the will * * *." Other cases not involving trusts are to the same effect. See Succession of Ryan, 228 La. 447, 82 So.2d 759 (1955); Girven v. Miller, 219 La. 252, 52 So.2d 843 (1951); Maddox v. Butchee, 203 La. 299, 14 So.2d 4 (1943); Succession of McCan, 48 La.Ann. 145, 19 So. 220 (1896); Anderson v. Pike, 29 La. Ann. 120 (1877); Provost's Heirs v. Provost, 13 La.Ann. 574 (1858); Farrar v. McCutcheon, 4 Mart. (N.S.) 45 (La.1825); Cloutier v. Lecomte, 3 Mart. (O.S.) 481 (La.1814).
Cases involving trusts created after the Trust Estates Law of 1938 but prior to the Trust Code of 1964 have also recognized that wills which attempt to create prohibited substitutions must be nullified. Succession of Simms, 250 La. 177, 195 So.2d 114 (1967); Succession of Guillory, 232 La. 213, 94 So.2d 38 (1957); Succession of Meadors, 135 So.2d 679 (La.App.1961).
In Succession of Simms the principles involved in prohibited substitutions were reviewed and restated:
It is obvious, therefore, that a prohibited substitution exists when a testator places the title of the property bequeathed in a first named legatee (referred to as the instituted heir) at his death, and directs that, at the end of a specified period, usually but not necessarily at the death of the instituted legatee, this title is to be turned over, transmitted, or passed to a second legatee (referred to as the substitute heir), with the result that both parties take their title directly from the testator, the title of the institute being one that he cannot alienate because of the charge that he is to transmit it to the substitute at some time in the future and the title of the substitute being one that the substitute cannot alienate because it does not exist until some date in the future when the property is to eventually "vest" in him. Marshall v. Pearce, 34 La.Ann. 557. In thus indicating a desire to give the property away "twice" to two named legatees, the testator, as pointed out in Succession of Reilly, supra, not only makes his own will, but attempts also to make the will of the instituted legatee, thus endeavoring to determine the law of successions by substituting "his own will * * * for the legal order of succession from his donee or legatee."
It is to check the power of a testator to thus control the descent and distribution of his property after title has vested in the first legatee upon his death, in contravention of the laws establishing the order of inheritance, as well as to present restraints upon the alienation of property, that the law, as a penalty, strikes down the entire disposition, the second paragraph of Article 1520 clearly providing that "Every disposition by which the donee, the heir, or the legatee is charged to preserve for or return a thing to a third person is null even with regard to the donee, the instituted heir, or the legatee." As pointed out in Succession of Johnson, 223 La. 1058, 67 So.2d 591, "in cases of prohibited substitutions the whole will is stricken with nullity whereas in cases of fidei commissa, it is only those dispositions which are tainted with that designation that are invalid," the vital distinction being whether the instituted legatee has under the bequest the authority to alienate the title placed in him * * *.
Our first problem is to examine the contested Gredler will in the light of these definitions of prohibited substitutions *416 and determine whether such a substitution is present. Section 1821 of the Trust Code stipulates that "A testamentary trust is created at the moment of the settlor's death * * *." The interest in the bequest of the universal legatees or principal beneficiaries of the trust also vests at the moment of the testatrix's or settlor's death.
As the will provides no term for the trusts, each of them will terminate upon the death of its respective beneficiary in accordance with Section 1833(1) of the Trust Code, providing that "If the trust instrument stipulates no term, the trust shall terminate: (1) Upon the death of the last income beneficiary who is a natural person * * *." La. Trust Code § 1833(1). And at the death of the beneficiaries the principal devolves upon their heirs. La. Civil Code art. 940; La. Trust Code § 1972.
Thus, the two principal beneficiaries cannot be living at the time the trusts terminate, since their respective deaths, by operation of law, will be the terminating events. Nevertheless the testatrix named Thomas Crichton III and John H. Crichton as beneficiaries of the trusts created by her will, and she provided that at their death the trust properties should be paid over and conveyed to their respective children. Therefore, inasmuch as a substitution consists of successive principal interests, and of the making of a will for the first named legatee by the decedent, the present will provides for the successive interests to vest after the termination of the trust. The substitution is therefore not "in trust" as the Trust Code could permit. It is, instead, out of trust. Moreover, in so providing the testatrix makes the will of the first legatees. In so doing she creates a substitution prohibited by law.
What, then, is the effect of the 1962 amendment to Section 16 of Article IV of the Constitution, the 1962 amendment to Article 1520 of the Civil Code and the Louisiana Trust Code on the substitution determined to exist in this will under prior law?
The 1962 amendment to Section 16 of Article IV of the Constitution abolished many of the restraints theretofore imposed upon trusts, but it retained the traditional prohibition against substitutions except as they might be authorized by the Legislature. Insofar as it is pertinent here, the amendment provides: "Substitutions not in trust are and remain prohibited; but trusts may contain substitutions to the extent authorized by the Legislature."
In like manner, the amendment to Article 1520 of the Civil Code retained the prohibition against substitutions except insofar as substitutions might be permitted in the laws relating to trust. As Amended in 1962 the Article now reads:
Substitutions are and remain prohibited, except as permitted by the laws relating to trusts.
Every disposition not in trust by which the donee, the heir, or legatee is charged to preserve for and to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee.
The amendments of 1962, therefore, do nothing to legitimate substitutions, except insofar as they authorize the Legislature to permit substitutions in trust, that is, the Trust Code of 1964 or other legislative acts must implement the authorizations contained in the amended Constitution and Civil Code.
Despite Section 1723 declaring that "A disposition authorized by this Code may be made in trust although it would contain a prohibited substitution if it were made free of trust.", study of the Trust Code discloses no provision permitting a substitution in trust.[1] To the contrary, Sections 1971 and 1972 of the Trust Code embody prohibitions *417 which effectively prevent the creation of substitutions in trust:
§ 1971. The interest of a principal beneficiary is acquired immediately upon the creation of a trust, subject to the exceptions provided in this Code.
§ 1972. Upon a principal beneficiary's death, his interest vests in his heirs or legatees, subject to the trust, except as to class trusts.
Class trusts mentioned as an exception in Section 1972, which contemplate shifting of principal, are not involved here, for they apply exclusively to children or grandchildren of the settlor. See La. Trust Code § 1891 et seq.
By the terms of Section 1971 the interest of a principal beneficiary "is acquired immediately upon the creation of a trust." The implications of the language of Section 1971 is explained in Comment (c) to that section: "Although under this Code interests that are the approximate equivalent of the Anglo-American shifting interest are permitted in income, such interests are not permitted in principal except as to class trusts and invasion of principal."
When the trust is created in the ordinary situation, therefore, the interest of a principal beneficiary must be acquired immediately upon the creation of that trust. (La. Trust Code § 1971). The provisions of the will of Mrs. Gredler violated this rule. By providing that upon termination of each trust, if the named beneficiary thereof is not living, the trust property is to be delivered to the child or children of the deceased beneficiary, and in the absence of a living child or children to successively named alternate beneficiaries, Section 1972 is also violated. At the same time the will created a prohibited substitution and as a consequence the entire will is null. La. Civil Code art. 1520; Succession of Simms, 250 La. 177, 195 So.2d 114 (1967); Succession of Johnson, 223 La. 1058, 67 So.2d 591 (1953).
It has been suggested in brief by amicus curiae that the decision in this case should rest upon Sections 1971 and 1972 alone, reference to substitutions being unnecessary. In addition to the fact that the primary issue posed by plaintiff's pleadings and briefs is whether the will contains a substitution, the suggestion overlooks the very significant and all important difference which results from a finding that a prohibited substitution is contained in the will and a finding that Sections 1971 and 1972 are violated by certain provisions of the will. In the case of the prohibited substitution the entire will is rendered null, whereas if we should confine our decision to a holding that Sections 1971 and 1972 were violated, the invalid provisions of the will could be excised without declaring the entire will null. La. Trust Code § 2251.
Our finding that a substitution exists in Mrs. Gredler's will amounts to a rejection of all other contentions or makes an answer to those contentions unnecessary.
For the reasons assigned, the judgment of the Court of Appeal is affirmed.
SANDERS, Justice (dissenting).
Under consideration here is the validity of two testamentary trusts. The disposition of the case is of unusual significance, because it tests for the first time the viability of the Louisiana Trust Code of 1964 when assaulted with an ancient weapon, the prohibition against substitutions. In nullifying the trusts, the majority has given no recognition to the changes in the law produced by the Louisiana Trust Code. Because of the failure of the majority to give effect to these legislative changes, I record my dissent.
Mrs. Gredler died on March 15, 1965, leaving an olographic will, providing:
"I do hereby give and bequeath to the said Thomas Crichton jr. as trustee for the benefit of his two sons, my nephews, Thomas Crichton third, and John H. Crichton, all the rest, residue and remainder *418 of my property, both real and personal, except my residence with contents therein, located on Creton Lake Road in the town of Bedford, County of Westchester, State of New York, and except also all moneys now to the credit of my account in the First National City Bank of New York (Mt. Kisco branch); shall thereafter be held in an undivided one-half interest in each of the aforementioned two trusts, each trust created and named for its above named beneficiary, and both trusts shall be Louisiana trusts, administered in the State of Louisiana, in accordance with the laws of LouisianaI appoint Thomas Crichton jr., my brother, Trustee of each of above named trusts. In the event that Thomas Crichton jr. should die, become incapacitated or refuse to act, prior to the termination of these trusts, then the First National Bank of Shreveport, Louisiana, shall become Trustee. The Trustee, Thomas Crichton jr., shall have full powers to sell, mortgage, or lease all property, and otherwise manage all trust property with the same control and freedom as though Trustee owned said property personally."
The will further stipulates that, if either Thomas Crichton, III, or John Hayes Crichton, the beneficiaries, are not living when the trust terminates, the trustee shall deliver both income and principal to an alternate beneficiary under the following instructions:
"In the event that either beneficiary, Thomas Crichton third or John Hayes Crichton be not living when this trust is terminated, both income and corpus of such said trust shall be paid over or conveyed by Trustee to the child or children of said deceased beneficiary in equal, undivided portions. In event that neither a beneficiary nor his child or children are living upon the termination of this trust, then said income and corpus shall be paid over or conveyed by the Trustee to the other trust beneficiary or, if he be not living, then to his child or children in equal or undivided portions. In the event that neither beneficiary, no any of their children be living upon termination of these trusts, as above herein set forth, then the income and corpus of these trusts shall be paid over or conveyed to those children of my deceased brother, Powell Crichton; namely, Powell Crichton jr., Kate Crichton, Edward B. Crichton and Gloria Crichton McGehee in equal or undivided portions."
After the will was probated and legatees sent into possession, Powell Crichton, Jr., and Gloria Crichton, a nephew and niece of the testatrix, brought this suit to nullify the will, primarily on the ground that the alternate beneficiary clause was a substitution prohibited by the constitution and laws of Louisiana. They seek to have the estate settled as an intestate succession.
Since Mrs. Gredler died after the effective date of the Louisiana Trust Code, the majority correctly holds that the Code applies to these trusts. See Succession of Simms, 250 La. 177, 195 So.2d 114 (1965). The parties concede that the Code applies.
The Louisiana Trust Code was prepared by the Louisiana State Law Institute, the official state law revision agency, at the direction of the Louisiana State Legislature.[1] It was designed to make available in Louisiana a variety of estate planning advantages. Oppenheim, Trust Code: Introductory Comments, 3A L.S.A. p. XXVII.
In 1962, prior to the adoption of the Code, the Legislature amended the Louisiana Constitution[2] to provide that trusts may contain substitutions to the extent authorized by the Legislature. The Legislature also amended Article 1520 of the Louisiana Civil Code to make substitutions in trusts an exception to the prohibition of *419 that article.[3] The Louisiana Trust Code elaborated in several related provisions.
LSA-R.S. 9:1723 provides:
"A disposition authorized by this Code may be made in trust although it would contain a prohibited substitution if it were made free of trust."[4]
LSA-R.S. 9:1724 provides:
"The provisions of this Code shall be accorded a liberal construction in favor of freedom of disposition. Whenever this Code is silent, resort shall be had to the Civil Code or other laws, but neither the Civil Code nor any other law shall be invoked to defeat a disposition sanctioned expressly or impliedly by this Code."
The purpose of these sections was to establish a new approach to trusts. In testing validity, the pivotal question is whether the trust dispositions are covered by the Louisiana Trust Code. If they are, the substitution concept is irrelevant by both constitutional and codal provision. The Court must accord to the Code a liberal construction in favor of freedom of disposition. If it can reasonably do so, the Court should construe the trust instrument so as to maintain its validity. LSA-R.S. 9:1753; St. Charles Land Trust, Achille Guibet v. St. Amant, 253 La. 243, 217 So.2d 385 (1968); Lelong v. Succession of Lelong, La.App., 164 So.2d 671 (1964).
With this approach in mind, I examine the disputed instrument. The will creates two trusts, each comprising one-half of the estate. It designates Thomas Crichton, Jr., the testatrix's brother, as trustee of both trusts. A nephew, Thomas Crichton, III, is named income and principal beneficiary of one trust; another nephew, John H. Crichton, is named income and principal beneficiary of the other. The will fixes no term for the trusts.
In the contested clause, the will provides that if either beneficiary is not living when his trust terminates, then both income and principal shall be delivered to one of the following alternate beneficiaries:
(1) The children of the deceased beneficiary;
(2) If no children survive, then the other trust beneficiary;
(3) If the second trust beneficiary does not survive, then his children;
(4) If no children of the second beneficiary survive, then the following nephews and nieces in equal proportions: Powell Crichton, Jr., Kate Crichton, Edward B. Crichton, and Gloria Crichton McGehee.
The clause shifts principal beneficiaries. On this subject, the Louisiana Trust Code provides:
LSA-R.S. 9:1971: "The interest of a principal beneficiary is acquired immediately upon the creation of a trust, subject to the exceptions provided in this Code."
LSA-R.S. 9:1972: "Upon a principal beneficiary's death, his interest vests in his heirs or legatees, subject to the trust, except as to class trusts."
As noted in the official comments,[5] these sections prohibit shifting interests in principal, except as to class trusts and principal invasion. Upon the creation of a trust, the interest of a principal beneficiary is acquired immediately. At the beneficiary's death, his interest vests in his heirs or legatees subject to the trust.
*420 The alternation of principal beneficiaries in the will clearly violates these codal provisions. Hence, the alternate beneficiary clause is illegal.
More difficult is the question of whether the illegal clause nullifies the entire trust. Here again, LSA-R.S. 9:1724 enjoins us to look first to the Louisiana Trust Code for the solution.
LSA-R.S. 9:2251 stipulates:
"If a provision in the trust instrument is invalid for any reason, the intended trust does not fail, unless the invalid provision cannot be separated from the other provisions without defeating the purpose of the trust."
The opponents of the will contend that section 2251 is inapplicable because the invalid beneficiary provision forms no part of the trusts. They also contend, under Article 1520 of the Louisiana Civil Code, that the alternate beneficiary provision is a prohibited substitution as to which a severance is never justified. Alternatively, they assert a severance would defeat the purpose of the testatrix and amount to a rewriting of the will.
The proponents assert that, as evidenced by the testamentary language, the dominant intent of the testatrix was to provide trust benefits for her favorite nephews, Thomas Crichton, III, and John Hayes Crichton; that the shift of principal is conditional only and depends upon the state of affairs at the termination of the trust; and that the alternate beneficiary provision can be severed from the other provisions without defeating the purpose of the trust.
I disagree with opponents as to the applicability of Section 2251. By its terms, the section applies to any invalid provision "in the trust instrument." Section 1725(8) defines trust instrument as the written document creating the trust and all amendments and modifications. In the present case, the trust instrument is the written will creating the trust. Clearly, the illegal provision is in the trust instrument. Hence, Section 2251 applies.
As I have observed, the will creates two trusts, one for each of the two nephews. Their father is named trustee with broad powers.[6] Both nephews survived the testatrix, both accepted the bequest, and the probate judgment has sent the trustee into possession of the trust property subject to the terms of the trusts.
As written by the testatrix, the illegal clause appears on the second page of the will. It directs the trustee at the termination of the trust to deliver both income and principal to alternate beneficiaries, but only if one or both of the first beneficiaries, Thomas Crichton, III, or John Hayes Crichton, "be not living when this trust is terminated."
The proponents assert that the directions to the trustee as to alternate beneficiaries rest upon an impossible condition: the death of the first named beneficiary before the trust is terminated. This event cannot occur, they contend, because LSA-R.S. 9:1833 now provides that a trust, such as those in this proceeding, without a fixed term ends upon the death of the natural-person income beneficiary.[7] Thus, should either of the two nephews die, his trust ends at the same time. This contention has merit, and the trusts should be maintained on the theory that the alternate beneficiaries can never succeed to the trust assets.
Assuming, however, that I am in error in construing the alternate beneficiary clause as an impossible condition, another *421 valid ground exists to uphold the trust. I refer to severance of the illegal clause.
The directions to the trustee are conditional, that is, they depend upon the death of the original beneficiaries. They pertain only to the future: the time of termination. They deal only with residual principal and income. The alternate beneficiary is to receive such principal and income free of the trust, because the trust no longer exists.
The words of the testatrix, in our opinion, demonstrate that the two nephews were the chief subjects of her favor. She named them as the sole beneficiaries during the existence of the trusts and fixed no duration. Only in the event of the prior deaths of both nephews and all of their children are other relatives called to share in the final distribution at the termination of the trusts.
To nullify the entire will would undoubtedly thwart her dominant purpose, that of providing benefits for the two nephews. The alternate beneficiary clause, looking only to an uncertain future, can be severed without great violence to the trusts.
I recognize that a severance in the present case, as in all cases of testamentary trusts, will alter to a limited extent the testatrix's last will. Section 2251, however, makes no distinction between trust instruments. It applies equally to all trusts, whether inter vivos or testamentary. Hence, I would sever the alternate beneficiary clause and maintain the will and the trusts.
The majority holds the will contains a prohibited substitution and, from that holding, postulates that Article 1520, LSA-C.C.[8] nullifies the entire will, rendering Section 2251 of the Louisiana Trust Code inapplicable. Such a holding is faulty in two respects.
First, the majority overlooks LSA-R.S. 9:1724, a provision conspicuously absent from the Trust Estates Law of 1938. The Louisiana Trust Code added this provision to limit the intrusion of other laws into the trust field. Section 1724 authorizes resort to the Civil Code and other laws only when the Louisiana Trust Code is silent. As I have noted, however, the Trust Code speaks on severance. Hence, Article 1520 of the Civil Code may not be interposed to defeat it. The question of severance should be resolved within the framework of the Louisiana Trust Code.
Second, in my opinion, the present will contains no prohibited substitution. In its Report to the Legislature accompanying the Louisiana Trust Code (3A LSA XXXIX), the Louisiana State Law Institute described the features of the prohibited substitution as follows:
(1) A double liberality, or a double disposition in full ownership, of the same thing to persons called to receive it, one after the other;
(2) Charge to preserve and transmit, imposed on the first beneficiary for the benefit of the second beneficiary;
(3) Establishment of a successive order that causes the substituted property to leave the inheritance of the burdened beneficiary and enter into the patrimony of the substituted beneficiary."
The present trusts do not fulfill these requirements. The trustee is no beneficiary. He is a fiduciary, without full ownership of principal and income. He administers the property, not for himself but for another. Hence, there is no double disposition in full ownership, wherein the first beneficiary is required to preserve and transmit the property to a second beneficiary. See LSA-C.C. Art. 1520; Succession of Thilborger, 234 La. 810, 101 So.2d 678; Succession of Fertel, 208 La. 614, 23 *422 So.2d 234; Tucker, Substitutions, 24 La.L. Rev. 439, 490-491.
In a scholarly article entitled Substitutions, Fidei Commissa and Trusts in Louisiana Law: A semantical Reappraisal, 24 La.L.Rev. 439, John H. Tucker, Jr., an eminent civil law authority, has conclusively demonstrated that trusts like those in contest here are not prohibited substitutions. His conclusions are in accord with settled French doctrine and jurisprudence. See authorities cited by Tucker, 24 La.L. Rev. 439, 476-495.
In nullifying the will in the present case, the majority defeats entirely the testamentary purpose of the testatrix. Such a harsh result can be avoided by applying the provisions of the Louisiana Trust Code. I would do so.
For the reasons assigned, I respectfully dissent.
HAMLIN, J., concurs.
Rehearing denied.
HAMLIN and SANDERS, JJ., are of the opinion a rehearing should be granted.
NOTES
[1] Lemann, How Practitioners Can Use the New Trust Code, 13 La.Bar J. 131 (1965).
[1] Act No. 5 of 1959 (Schedule 50).
[2] Art. IV, Sect. 16.
[3] Act No. 45 of 1962.
[4] See also LSA-R.S. 9:1737: "A trust containing a substitution authorized by this code is valid."
[5] LSA-R.S. 9:1971, Comment (C): "Although under this Code interests that are the approximate equivalent of the Anglo-American shifting interest are permitted in income, such interests are not permitted in principal except as to class trusts and invasion of principal. Secs. 1891-1906, 1961-1965, 2067, and 2068; Restatement of Property, Secs. 153-158."
[6] "to sell, mortgage, or lease all property, and otherwise manage all trust property with the same control and freedom as though Trustee owned said property personally."
[7] At the time the testatrix wrote the will, the term of the trust could extend beyond the death of the beneficiary, because the minimum term was ten years from the death of the settlor. R.S. 9:1794, Trust Estates Act of 1938, as amended.
[8] Article 1520, LSA-C.C. provides that the disposition is "null, even with regard to the donee, the instituted heir or the legatee."