PRICE, Judge.
On this appeal the proponents of an olo-graphic will appeal a judgment invalidating a portion of the testament on the ground that it contained a substitution prohibited *876 by La.C.C. Art. 1520. For the reasons hereinafter set forth, this judgment is affirmed.
Ronald Bruce Goode died testate on April 30, 1978. At the time of his death he was domiciled in Caddo Parish, Louisiana. Decedent was survived by his half-brother, James Philip Goode, Sr., and six nieces and nephews (the children of his brother and a predeceased half-sister). He left no ascendants or descendants.
The decedent left an olographic will naming James Philip Goode, Sr., and a nephew, James Philip Goode, Jr., as coexecutors of his estate. After qualifying as coexecutor, Goode, Sr., withdrew from that position and filed a petition seeking to annul the probated testament.
The will, valid in form, contains the following bequest which is the subject of this litigation:
Fifth: All oil & gas royalty interest payments owned by me shall be paid to Pauline Egbert Parker for as long as she might live. After her death, the amount of any payments shall be equally divided between my nieces and nephews and Linda Cosby Paine.
The trial court held the foregoing bequest constituted a prohibited substitution and therefore declared it a nullity. From this judgment Pauline Egbert Parker, Edmond E. Parker, Laura Hope Walton Lawrence, Kenneth Walton, and Linda Cosby Paine have appealed. The appellants are all named beneficiaries in the challenged testament. Plaintiff has answered the appeal seeking to have the judgment amended to declare the entire will null and void.
In arriving at the correct interpretation of the challenged bequest this court is faced with two issues:
(1) Does the fifth bequest of decedent’s will constitute a prohibited substitution?
(2) If so, is the entire testament to be annulled or only the tainted bequest?
The Civil Code in Article 1520 makes the following pronouncement relative to substitutions:
Substitutions are and remain prohibited, except as permitted by the laws relating to trusts.
Every disposition not in trust by which the donee, the heir, or legatee is charged to preserve for and to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee.
A recent analysis of Art. 1520 led our Supreme Court to state that before a legacy is declared a prohibited substitution it must:
... (1) constitute a double disposition, in full ownership, of the same thing to persons called to receive it one after another; (2) impose upon the first beneficiary a charge to preserve and transmit the succession property; and (3) establish a successive order that causes the property to leave the inheritance of the burdened beneficiary and enter into the patrimony of the substituted beneficiary. A prohibited substitution, as defined by Civil Code Article 1520, must have all of these characteristics. Baten v. Taylor, 386 So.2d 333 (La.1979).
The appellants take the position that the bequest at issue cannot be a prohibited substitution since it contains neither a double disposition in full ownership nor a charge imposed on the first beneficiary to preserve and transmit the object of the legacy to a substitute legatee.
Appellants contend that a distinction should be drawn between the royalty interest owned by the decedent and the payments attributable to such interest. Their contention is that the testator actually bequeathed a usufruct to the first named beneficiary consisting of the use of the monies generated from the royalty interest. Appellants next contend that at the death of the first named beneficiary, the next named beneficiaries would be entitled to the same use of the monies. Establishment of such successive usufructs is authorized by La. C.C. Art. 546, and C.C. Art. 1522 states that the separate disposition of usufruct and naked ownership is an exception to the Civil Code ban on substitutions.
*877 Since the attributes of full ownership are separated according to this interpretation of the challenged bequest, appellants conclude that this is not a double disposition in full ownership and consequently not a prohibited substitution.
The argument that a bequest is not a prohibited substitution but rather a disposition of usufruct and naked ownership is not a new one and has been the subject of much litigation and critical review. See e. g. Nabors, An Analysis of the Substitution-Usufruct Problem Under Articles 1520 and 1522 of the Louisiana Civil Code, 4 Tul.L. Rev. 603, 607 (1930); Comment, The Fertel Case and Articles 1520 and 1522 of the Louisiana Civil Code, 3 Loyola L.Rev. 185 (1946).
Although our review of the jurisprudence reveals no cases in which it was argued that the bequest was a granting of successive usufructs with the naked ownership passing intestate (the normal contention being that the first named beneficiary is the usufruc-tuary and the second named beneficiary the naked owner), the cases are on point as to the substitution-usufruct distinction.
Our Supreme Court stated over fifty years ago that:
It is well settled that a testamentary disposition containing the stipulation that at the death of the legatee the property shall go to another legatee named in the will is not the same thing as the giving of the usufruct to the one and the ownership of the property to the other legatee. . . . In order that a testament may convey the usufruct of property to one legatee and the ownership of it to another, the title to the property itself to the one legatee, as well as the usufruct to the other legatee, must be transmitted directly from the testator and invest the title in the one legatee and the usufruct in the other immediately at the death of the testator, (citations omitted) Succession of Heft, 163 La. 467, 112 So. 301 (1927).
Applying these rules to the case at hand we must ascertain whether the testator expressed in his testament the intention to give the property itself or only the usufruct to the first legatee.[1] The task of interpretation becomes more difficult and the resulting opinions less reconcilable when the testator fails to use express words such as “usufruct” or “naked ownership” in the disposition to clearly signify his intention. See citations and examples of apparently conflicting decisions collected at 3 Loyola L.Rev. 185, 188, supra.
In examining the language used by the decedent in the case at bar, we note the absence of customary words (e. g. “use” or “use and benefit”) which would suggest that a usufruct had been bequeathed. Instead the language of the bequest tends to indicate that the testator was bequeathing a royalty interest and not merely the payments derived from it when he provides that “oil, gas and royalty interest payments owned by me shall be paid to . . .,” followed by a list of donees. The quoted language clearly indicates an intent on the part of the testator to bequeath in full ownership royalty interests owned by him rather than payments from royalty interests owned by him. Consequently, the bequest contemplates a vesting of the property in full ownership in Pauline Egbert Parker for as long as she might live. At her death the bequest would vest the same property in other persons (the substitute beneficiaries) who take the property directly from the testator by a title which “springs into existence only on the death of the first donee.” See Succession of Thilborger, 234 La. 810, 101 So.2d 678 (1958). This second vesting of title has been referred to as the “hallmark of the prohibited substitution.” Succession of Simms, 250 La. 177, 195 So.2d 114 (1966).
Although we are mindful of the rule of interpretation that would require a court to place a savings construction on ambigu *878 ous dispositions,[2] courts are not at liberty to disregard the words used in a testament. Justice O’Niell once remarked in the famous case of Succession of McDuffie, 139 La. 910, 72 So. 450 (1916), dissenting opinion:
... If we were at liberty to disregard the terms used in a testament, to carry out the presumed intention of the testator, every disposition that has been declared null as a prohibited substitution should have been maintained as a donation of the usufruct of the property to one person and the ownership to another. I have not yet observed, and cannot imagine, a case in which a prohibited substitution should be decreed null, if we apply the doctrine “that a bequest of property for life is a donation of the usufruct.”
Appellant next contends that the bequest is not a prohibited substitution because it lacks the necessary charge imposed on the first named beneficiary to preserve and transmit the succession property to a substitute. See Baten v. Taylor, supra. This contention is based on the argument that the first named beneficiary has only the use of the monies derived from the royalty interests. Appellants contend that a construction of this bequest “cannot be made placing Pauline E. Parker under an obligation or charge to preserve, keep, or invest, the royalty interest payments bequeathed and transmit same to the substituted beneficiaries.”
However, appellants concede that it is not necessary for the creation of a prohibited substitution that the testator track the exact language of C.C. Art. 1520. “It suffices that the charge to preserve and to deliver necessarily results from the tenor of the disposition, or, what amounts to the same thing, that it is impossible to execute the disposition without preserving and making restitution of the property given or bequeathed.” Baten v. Taylor, supra.
Having concluded that the bequest at issue amounts to a double disposition in full ownership, it necessarily follows that the instituted beneficiary is obligated to preserve the succession property.
Such a double disposition “destroys the power of alienation of the property by the first donee, because he is bound to hold it until his death in order that the person then called to the title may take it. At the same time no power of alienation exists in the second donee during the life of the first, because his title comes into being only at the death of the latter.” Succession of Thilborger, supra, citing Succession of Blossom, 194 La. 635, 194 So. 572 (1940).
Since the challenged bequest specifies the substituted beneficiaries who would take the property at the death of instituted heir, it establishes a successive order that results in the property entering the patrimony of the substitutes upon the death of the burdened beneficiary. This is the third characteristic of a prohibited substitution enumerated by the Supreme Court in Ba-ten.
Since this court is of the opinion that the bequest at issue constitutes a double disposition in full ownership in which the donee is charged to preserve and transmit the succession property to named substitutes, we are constrained to hold that the bequest constitutes a substitution prohibited by C.C. Art. 1520.
Plaintiff in answering the appeal seeks to have the judgment amended to declare the entire will null and void. His contention that the effect of a prohibited substitution is to invalidate the entire will is without merit.
La.C.C. Art. 1519 provides that:
In all dispositions inter vivos and mor-tis causa impossible conditions, those which are contrary to the laws or to morals, are reputed not written.
*879 This article provides the basis for the rule that the invalidity of a portion of a will does not ordinarily invalidate the will in its entirety. Accordingly, La.C.C. Art. 1520 merely declares that every disposition containing a prohibited substitution is null, not the entire testament. The interpretation of the second paragraph of C.C. Art. 1520 sanctioned by the jurisprudence is “to the effect that the nullity of a bequest, as containing a prohibited substitution, does not offset the enforceability of the other valid provisions of the will, which are regular as to form.” Succession of Walters, 261 La. 59, 259 So.2d 12 (1972).
For the foregoing reasons, the judgment appealed is affirmed. Costs of this appeal are assessed to appellants.

. La.C.C. Art. 1712 provides:
In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament.

. La.C.C. Art. 1713 provides:
A disposition must be understood in the sense in which it can have effect, rather than that in which it can have none.
See also Succession of Dinwiddie, 263 So.2d 739 (La.App. 4th Cir. 1972).